[No. 20665-0-II. Division Two. November 26, 1997.]

TIGER OIL CORPORATION, *Appellant*, v. THE DEPARTMENT OF LICENSING, *Respondent*.

*Helen M. Kennedy*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Pat L. De-Marco, Assistant*, for respondent.

BRIDGEWATER, J. — Tiger Oil Corporation appeals a trial court order ruling, as a matter of law, that Tiger Oil is not

entitled to a direct refund of taxes it paid on special fuel used for a tax-free purpose. We hold that Tiger Oil is entitled to a refund and remand for further proceedings to determine the amount due.

Tiger Oil buys special fuels from distributors and sells it to special fuel users, but does not have a Washington special fuel dealer's license. Tiger Oil claims that it pays taxes to Washington at the time it purchases special fuels. Tiger Oil does not charge its customers the tax if they can certify that they were using the fuel for tax-exempt uses. On November 3, 1994, Tiger Oil filed an application for a refund of taxes totaling $38,536.68 paid between January 1 and October 31, 1994, on fuel that was used for tax-exempt purposes.

The Department of Licensing (the Department) denied Tiger Oil's application on November 18, 1994. The reasons stated were that an unlicensed fuel dealer must sell special fuels with tax included and only special fuel users have the right to refund or tax credit under the statute. After this denial, Tiger Oil charged its customers the tax and obtained assignments from them for any special fuel tax refunds to which they were entitled.

On January 18, 1995, Tiger Oil amended its refund claim, including the assignments, and updated the claim to include taxes paid between November 1 and December 31, 1994, bringing the total refund sought to $39,447.57. On March 16, 1995, the Department again denied the claim, asserting that licensed special fuel users could not receive a refund, but only a tax credit.

Tiger Oil then filed a complaint in Thurston County Superior Court on June 14, 1995, claiming that the Department exceeded its statutory authority in denying the claims for refund, and seeking a refund either directly, or through the assignments from the special fuel users. The Department counter-claimed, asserting that Tiger Oil had unlawfully acted as an unlicensed fuel dealer in Washington by purchasing special fuel without paying the tax, and selling the fuel without collecting the tax upon delivery.

Tiger Oil and the Department filed cross-motions for summary judgment. The court denied both summary judgment motions, but held that while Tiger Oil was not entitled to a direct refund, it was entitled to whatever refund due to those of its customers (special fuel users) who assigned their rights to Tiger Oil. The State moved to have its counter-claim dismissed without prejudice. Tiger Oil then moved for attorney fees and costs. The court dismissed the Department's counter-claim and denied Tiger Oil's motion for attorney fees and costs. After the court made that ruling and denied Tiger Oil's motion for reconsideration, the parties stipulated to dismissal of all remaining claims.

Tiger Oil appeals the court's conclusion that it is not entitled to a direct refund and the court's denial of its motion for attorney fees and costs on the counter-claim.

## I

Tiger Oil contends that under the Special Fuel Tax Act (the Act), RCW 82.38, it is entitled to a direct refund from the State for all taxes paid on fuel used for tax-exempt purposes. The Department argues that only special fuel users are entitled to a refund or tax credit under the Act.

The court's challenged ruling partially granted each side's summary judgment motion. The familiar standard for review of a summary judgment order appears succinctly in *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 12-13, 721 P.2d 1 (1986) and *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982): the appellate court's role is to engage in the same inquiry as the trial court. A summary judgment motion brought under CR 56(c) can be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. The court must consider all facts submitted and all

reasonable inferences from them in the light most favorable to the nonmoving party. The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or having its affidavits considered at face value; after the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts sufficiently rebutting the moving party's contentions and disclosing the existence of a material issue of fact. The court should grant the motion only if, from all the evidence, reasonable persons could reach but one conclusion.

Through their cross-motions for summary judgment, the parties conceded that there were no material issues of fact. Thus, our only question is whether the court's legal conclusions were correct. In order to evaluate the claims in this case, we must first explore the statutory scheme of the Act. Then, we can determine whether the parties here complied with the Act and whether Tiger Oil was entitled to a direct refund under the Act.

 Construction of a statute is a question of law that we review de novo under the error of law standard. *City of Pasco v. Public Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992); *Inland Empire Distrib. Sys., Inc. v. Utilities & Transp. Comm'n*, 112 Wn.2d 278, 282, 770 P.2d 624, 87 A.L.R.4TH 627 (1989). The courts retain the ultimate authority to interpret a statute. *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325-26, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). The reviewing court's obligation is to give effect to the intent of the Legislature. Review begins with the plain language of the statute. *Lacey Nursing Ctr., Inc. v. Department of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). Where a statute is unambiguous, legislative intent is determined from the language of the statute alone. *Waste Management of Seattle, Inc. v. Washington Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994); *In re Eaton*, 110 Wn.2d 892, 898, 757 P.2d 961 (1988).

██ ██ Whether an agency's construction of the statute is

accorded deference depends on whether the statute is ambiguous. Where an agency is charged with the administration and enforcement of a statute, the agency's interpretation of an ambiguous statute is accorded great weight in determining legislative intent. *Pasco*, 119 Wn.2d at 507 (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813-14, 828 P.2d 549 (1992)). Absent ambiguity, however, there is no need for the agency's expertise in construing the statute. *Pasco*, 119 Wn.2d at 509. Furthermore, we will not defer to an agency determination that conflicts with the statute. *Cowiche*, 118 Wn.2d at 815.

The Act was enacted to impose a tax on those fuels used to power motor vehicles not taxed in the Act. RCW 82.38.010. All special fuel used to power vehicles that travel on highways, with certain exceptions not relevant here, is taxed. RCW 82.38.030(2). A special fuel dealer is "any person engaged in the business of delivering special fuel" to special fuel users. RCW 82.38.020(7). Both Tiger Oil and the Department agree that Tiger Oil was a special fuel dealer and that it sold and delivered special fuel similar in some respects to a licensed special fuel dealer. The Department claimed in its counter-claim that Tiger Oil was in violation of RCW 82.38.090, which states in part:

> It shall be unlawful for any person to act as a special fuel dealer or a special fuel user in this state unless such person is the holder of an uncanceled special fuel dealer's or a special fuel user's license issued to him or her by the department.
>
> A special fuel dealer's license authorizes a person to deliver previously untaxed special fuel into the fuel supply tanks of motor vehicles, collect the special fuel tax on behalf of the state at the time of delivery, and remit the taxes collected to the state as provided herein. A licensed special fuel dealer may also deliver untaxed special fuel into bulk storage facilities of a licensed special fuel user or dealer without collecting the special fuel tax. Special fuel dealers, when making deliveries of special fuel into bulk storage to any person not holding a valid special fuel license, must collect the special fuel tax at time of delivery, unless the person to whom the delivery is made is specifically exempted from the tax as provided herein.

Tiger Oil did not have a license and was acting as a special fuel dealer. Thus, it appears that Tiger Oil was in violation of the plain language of this statute.

Tiger Oil contends that it complies with this statute so long as it does not deliver "previously untaxed" fuel. The Department's rules seem to support that contention. WAC 308-77-032 provides:

> A special fuel dealer's license must be obtained before engaging in the retail sale of previously untaxed special fuel, regardless of whether or not the special fuel tax is collected on the sale . . . . Persons purchasing special fuel with the special fuel tax included may resell this special fuel without having to obtain a special fuel dealer's license.

Tiger Oil contends that it paid the taxes on all fuel that it purchased and thus was not in violation of the Act. The Department does not now contend that Tiger Oil violated the law by purchasing special fuel without a license.

■■ There is no provision that prohibits Tiger Oil from applying for a refund even if it did buy and sell special fuels in violation of the statute. The only punishments listed in the statute deal with tax evasion, RCW 82.38.270, which is not the case here. In neither of the penalty provisions of the statute is there a penalty for acting as a special fuel dealer without a license. *See* RCW 82.38.170, .270. Nor does the refund statute, RCW 82.38.180, exclude persons who acted as unlicensed special fuel dealers. Therefore, we assume that Tiger Oil was allowed under the statute to sell special fuel because this issue is not relevant to determining whether Tiger Oil is entitled to a refund.

At oral argument, the Department gave its interpretation of the statute with regard to unlicensed special fuel dealers. The Department concedes that Tiger Oil could sell the special fuel; it stated that Tiger Oil did not have to charge tax on the sales because when the tax has already been paid, it *accompanies* the special fuel through future transactions. Moreover, Tiger Oil was not permit-

ted to collect the tax for the State because it was not licensed. RCW 82.38.090. But the Department maintains that in order for Tiger Oil to recoup the tax it had previously paid for use that was non-taxed, it was required to charge licensed users the amount of money equivalent to the tax and then obtain from the Department an assignment for taxes paid. Further, the Department contends that even if Tiger Oil were able to apply for a refund through the assignment of the users' rights, it would have to wait to apply until the reporting period had passed to see if the licensed users had used some of the fuel on the highways and owed money to the State for that use.

The Department concedes that the statute is silent with regard to sales made by unlicensed dealers to licensed users. We decline to adopt the Department's interpretation because the statute is unambiguous in allowing parties like Tiger Oil to receive a refund. But, we comment briefly upon the Department's interpretation. If the tax accompanies the fuel and Tiger Oil cannot collect the tax, then no portion of the moneys paid by such users is tax and cannot be subject to refund. The Department takes its position because it interprets the statute to mean that only licensed users can obtain a refund. We disagree.

Tiger Oil asserts that under RCW 82.38.090, licensed special fuel users are entitled in certain situations to purchase fuel without paying the taxes, which it accordingly allowed its customers to do:

> A special fuel user's license authorizes a person to purchase special fuel into bulk storage for use in motor vehicles either on or off the public highways of this state without payment of the special fuel tax at time of purchase. Holders of special fuel licenses are all subject to the bonding, reporting, tax payment, and record-keeping provisions of this chapter. All purchases of special fuel by a licensed special fuel user directly into the fuel supply tank of a motor vehicle are subject to the special fuel tax at time of purchase. Special authorization may be given to farmers, logging companies, and construction companies to purchase special fuel directly into the supply tanks of nonhighway equipment or into portable

slip tanks for nonhighway use without payment of the special fuel tax.

The Department contends that Tiger Oil could not sell special fuel without charging the tax, but has provided no statutory support for that contention.[1] The Act does require licensed special fuel dealers to collect the tax, RCW 82.38.090, but there is no similar requirement for unlicensed dealers. Thus, Tiger Oil was not required by the statute to charge its customers the tax and could not charge the tax because it had previously been paid. But, Tiger Oil claims that it paid the taxes on all fuel, even that which was ultimately used for untaxed uses, and thus wants a refund for those taxes it paid on untaxable fuel.

Tiger Oil contends that it is entitled to a direct refund under RCW 82.38.180, which provides:

> Any person who has paid a special fuel tax either directly or to the vendor from whom it was purchased may file a claim for a refund of the tax so paid and shall be reimbursed and repaid the amount of:
>
> (1) Any taxes previously paid on special fuel used for purposes other than for the propulsion of motor vehicles upon the public highways in this state.
>
> (2) Any taxes previously paid on special fuel exported for use outside of this state. Special fuel carried from this state in the fuel tank of a motor vehicle is deemed to be exported from this state.
>
> (3) Any tax, penalty or interest erroneously or illegally collected or paid.

---

[1] The Department cites RCW 82.38.030(3) (special fuel user must pay taxes on the taxable use of previously untaxed special fuel), RCW 82.38.090 (licensed special fuel dealers are authorized to collect taxes on previously untaxed fuel from special fuel users), and WAC 308-77-032 (dealers must collect taxes on previously untaxed fuel from special fuel users; unlicensed dealers may purchase special fuel with the tax included and resell it) for support of this argument, but only WAC 308-77-032 could arguably require collection of the tax. Neither of the statutory provisions require an unlicensed special fuel dealer to collect taxes from licensed special fuel users where the taxes on the fuel have already been paid. Even the WAC appears to refer only to licensed dealers when it requires dealers to collect the tax. *See* WAC 308-77-032.

(4) Any taxes previously paid on all special fuel which is lost or destroyed, while applicant shall be the owner thereof, through fire, lightning, flood, wind storm, or explosion.

(5) Any taxes previously paid on all special fuel of five hundred gallons or more which is lost or destroyed while applicant shall be the owner thereof, through leakage or other casualty except evaporation, shrinkage, or unknown causes.

Recovery for such loss or destruction under either subsection (4) or (5) of this section must be susceptible to positive proof thereby enabling the department to conduct such investigation and require such information as they may deem necessary. In the event that the department is not satisfied that the fuel was lost or destroyed as claimed because information or proof as required hereunder is not sufficient to substantiate the accuracy of the claim, they may deem such as sufficient cause to deny all right relating to the refund or credit for the excise tax paid on special fuel alleged to be lost or destroyed.

"Person" is defined as "every natural person, fiduciary, association or corporation . . . ." RCW 82.38.020(1). RCW 82.38.180 plainly states that any person who has paid a special fuel tax is entitled to file for a direct refund and *shall* be reimbursed. "The use of the word 'shall' imposes a mandatory duty." *Waste Management*, 123 Wn.2d at 629. The definition of person includes Tiger Oil, as does the action—paying the tax to a special fuel supplier. Furthermore, RCW 82.38.190, providing the procedure for a refund or credit, specifically refers to refunds due to a special fuel dealer or other person, showing that the Legislature contemplated that they too would be entitled to a refund. Indeed, RCW 82.38.190(2) clearly indicates that there are three classes of recipients of refunds: special fuel dealers, special fuel users, or any persons to whom a refund is due:

> Any amount determined to be refundable by the department under RCW 82.38.180 shall first be credited on any amounts then due and payable from the special fuel dealer or special fuel user or to *any person* to whom the refund is due,

and the department shall then certify the balance thereof to the state treasurer, who shall thereupon draw his warrant for such certified amount to such special fuel dealer or special fuel user *or any person* . . . .

(Emphasis added.) Thus, while both parties argue about the purpose of the statute and which interpretation better serves that purpose, the plain language of the statute allows no room for such second-guessing of legislative intent. Tiger Oil is entitled to petition for a refund as either a "special fuel dealer" or a "person."

The Department interprets this statute as requiring the user to apply for a refund. No part of the Act limits refunds or credits to users. As a matter of fact, it is in derogation of the statute setting forth the procedure for claiming refunds, RCW 82.38.190, as we have set forth above. The Department argues that its interpretation is consistent with the purpose of the Act as a whole because the ultimate use of the fuel determines whether it is taxable. There is no support in the Act for this interpretation. On the contrary, the Legislature's use of the word "person" to describe the class of individuals entitled to refund implies a broad interpretation, including dealers and others. Furthermore, the Legislature gives the claimant the burden of establishing the tax-free use of the fuel, *see* RCW 82.38.180, so the fact that the ultimate use is determined by the ultimate user does not necessitate a refund application from the user.

If the Legislature had intended to prohibit sales of special fuel from unlicensed dealers to licensed users or to prohibit unlicensed dealers from obtaining refunds, it would have been a simple matter to have so stated. It did not. Further, the Department's contention that even if Tiger Oil could obtain a refund, it must wait until the licensed users supply proof that all of their use was untaxed is illogical. Licensed users may make payments for special fuel they use on the highways at their reporting periods to make adjustments for taxes that should have been paid. There is no statutory provision that

precludes Tiger Oil from claiming a refund in advance of the licensed users reporting period, so long as it is basing its request for refund upon proper proof that the licensed user anticipates using the fuel for an untaxed purpose.

The Department argues that a refund may only be in the form of a tax credit. This position is without support. The Act does require the Department to first credit refunds against taxes owed, but the difference must be refunded. RCW 82.38.190(2).

Tiger Oil also contends that it is entitled to interest under RCW 82.38.190(5), which states: "Interest shall be paid upon any refundable amount or credit due under RCW 82.38.180(3) at the rate of one percent per month from the last day of the calendar month following the reporting period for which the refundable amount or credit is due." But, the Department correctly points out that even if Tiger Oil is entitled to a refund, it is not under RCW 82.38.180(3), which applies only to taxes "erroneously or illegally collected or paid." Tiger Oil did not erroneously pay and the Department did not illegally collect the taxes Tiger Oil paid on the special fuel when it purchased it. Instead, Tiger Oil's refund would be under RCW 82.38.180(1): "Any taxes previously paid on special fuel used for purposes other than for the propulsion of motor vehicles upon the public highways in this state." Tiger Oil is not entitled to interest.

Thus, the trial court erred in ruling as a matter of law that Tiger Oil was not entitled to a refund for taxes it paid for untaxable special fuel. Because Tiger Oil must still prove the amount of taxes it paid and the amount due in refund, we remand to superior court for further proceedings.

## II

Tiger Oil contends that the trial court erred in denying its motion for attorney fees and costs under RCW 4.84.185 and CR 11. The decision to award attorney fees on this basis is left to the trial court's discretion and will

not be disturbed in the absence of a clear showing of abuse. *Fluke Capital & Mgt. Servs. Co. v. Richmond*, 106 Wn.2d 614, 625, 724 P.2d 356 (1986); *Clarke v. Equinox Holdings, Ltd.*, 56 Wn. App. 125, 132, 783 P.2d 82, *review denied*, 113 Wn.2d 1001 (1989). Therefore, the question is whether the court's conclusion was the product of an exercise of discretion that was manifestly unreasonable or based on untenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

RCW 4.84.185² allows for recovery of attorney fees and costs for the prevailing party where the lawsuit is found to be "frivolous." A lawsuit is frivolous when it cannot be supported by any rational argument on the law or facts. *Daubner v. Mills,* 61 Wn. App. 678, 684, 811 P.2d 981 (1991); *Bill of Rights Legal Found. v. Evergreen State College*, 44 Wn. App. 690, 696-97, 723 P.2d 483 (1986). The statute requires that the action be frivolous in its entirety. *Biggs v. Vail*, 119 Wn.2d 129, 133, 830 P.2d 350 (1992). Thus, if any one of the claims asserted was not frivolous, then the action is not frivolous. *Biggs*, 119 Wn.2d at 137. In this case, the Department asserted in its counter-claim that Tiger Oil sold special fuel without a license in violation of RCW 82.38.090, which declares that act to be unlawful. Tiger Oil admits that this is true. Thus, the trial court did not abuse its discretion in finding that the counter-claim is not frivolous.

Tiger Oil also sought attorney fees and costs under

---

²RCW 4.84.185 states:

In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense. This determination shall be made upon motion by the prevailing party after a voluntary or involuntary order of dismissal, order on summary judgment, final judgment after trial, or other final order terminating the action as to the prevailing party. The judge shall consider all evidence presented at the time of the motion to determine whether the position of the nonprevailing party was frivolous and advanced without reasonable cause. In no event may such motion be filed more than thirty days after entry of the order.

CR 11, which permits a court to impose a sanction, including the opposing party's attorney fees, on an attorney who does not make a "reasonable inquiry" or whose arguments are not "well grounded in fact" and "warranted by existing law." Tiger Oil complains particularly about the Department's allegation in the counter-claim that it purchased fuel without paying the tax. The Department knew that Tiger Oil was selling special fuel without a license and had some evidence that it had purchased some fuel on which the taxes were not paid. The fact that the Department dismissed its claim after conducting discovery does not constitute proof that it did not have a factual basis for its allegations. The trial court did not abuse its discretion in finding no violation of CR 11.

We reverse and remand.

HOUGHTON, C.J., and ARMSTRONG, J., concur.

Motions for reconsideration denied February 9 and 18, 1998.