[No. 32421-1-II. Division Two. September 13, 2005.]

*In the Matter of the Fuel Tax or Prorate Assessment of* NOR-PAC ENTERPRISES, INC.

NOR-PAC ENTERPRISES, INC., *Appellant*, v. THE DEPARTMENT OF LICENSING, *Respondent*.

558

*Philip A. Talmadge* and *Emmelyn Hart-Biberfeld* (of *Talmadge Law Group, P.L.L.C.*), for appellant.

*Robert M. McKenna, Attorney General*, and *Erika G. Uhl, Assistant*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — Nor-Pac Enterprises, Inc. (Nor-Pac), owns a business that operates dump trucks. It appeals a superior court decision affirming a final order by the Director of the Department of Licensing (DOL) determining that Nor-Pac was not eligible for a credit for taxes "erroneously or illegally collected or paid" under RCW 82-.38.180(3) of the Special Fuel Tax Act (SFTA).[1] Nor-Pac

---

[1] Ch. 82.38 RCW.

contends that it was entitled to a "power take-off" (PTO) refund under that subsection and therefore had five years— instead of 13 months permitted under RCW 82.38.190—to seek the tax refund. Nor-Pac also contends that SFTA violates equal protection and due process insofar as it permits only 13 months for a party to seek a PTO refund, whereas the DOL is permitted five years to seek taxes owed to it. Finally, Nor-Pac seeks reasonable attorney fees under RCW 4.84.350, the equal access to justice act, RCW 4.84.340-.360, and RAP 18.1.

¶2 We hold that Nor-Pac is not entitled to a refund under RCW 82.38.180(3) for erroneously or illegally collected taxes and, even if it were, it never filed the claim as that statute requires. But we hold that Nor-Pac is entitled to a PTO credit under RCW 82.38.180(1) for the 21-month audit period for which the DOL seeks taxes and, as a prevailing party, Nor-Pac is entitled to its reasonable attorney fees.

## FACTS

¶3 Nor-Pac operates its dump trucks primarily in Washington, Oregon, and Idaho and uses "special fuel" for its operations. Administrative Record (AR) at 42. Special fuels are taxed under SFTA and the International Fuel Tax Agreement (IFTA)[2] administered by the DOL.

¶4 On January 30, 2003, a DOL auditor prepared an audit report of Nor-Pac for (1) November 1, 1998, through October 31, 2002, for International Registration Plan (IRP) excise taxes;[3] and (2) January 1, 2001, though September 30, 2002, for the special fuel tax under IFTA. The auditor determined that Nor-Pac had not received PTO tax credits to which it was entitled.[4] The auditor calculated Nor-Pac's

[2] IFTA is a multijurisdictional agreement designed to facilitate uniformity in the administration of motor fuel taxation laws. The state of Washington is a signatory to the agreement.

[3] These taxes are not disputed and we do not discuss the IRP further.

[4] Under SFTA, special fuel used for purposes other than the propulsion of motor vehicles on state highways is not taxed.

PTO credit for the 21-month IFTA audit period but the DOL's assessment limited the credit to a 13-month period, September 1, 2001, through September 30, 2002.[5] Thus, Nor-Pac owed the DOL $9,352.10.[6] On February 13, 2003, the DOL sent Nor-Pac a notice of assessment for that amount.

¶5 On March 3, 2003, Nor-Pac appealed the initial tax assessment. On April 7, 2003, the DOL issued an amended notice with a revised assessment of $9,141.02.[7] The revised assessment included fuel tax assessments of $980.15 and $1,073.02 for the period of January 1, 2001, through September 30, 2002, and PTO fuel tax credits of $3,667.52 for the period of September 1, 2001, through September 30, 2002, for a net special fuel tax refund of $1,614.35 on the IFTA portion of the assessment.

¶6 Nor-Pac timely appealed the revised notice of assessment and moved for summary judgment on September 30, 2003.[8] Nor-Pac contended (as it does before this court) that it was entitled to five years' PTO credit, that SFTA was unconstitutional, and that it was entitled to attorney fees under the equal access to justice act.

¶7 A hearing on stipulated facts was held before an administrative law judge (ALJ) on October 6, 2003. On November 5, 2003, the ALJ entered findings of fact and conclusions of law, ruling in favor of the DOL on the

---

[5] During Nor-Pac's audit, manager Gerald Meyer indicated that, although the dump trucks had PTO units, he had not filed for the credits because he would rather pay too much tax than not enough. Meyer made a quick PTO credit calculation for each quarter of the audit period January 1, 2001, to September 30, 2002, and requested that the auditor include the credit in the tax recalculation. The auditor included the PTO calculation for that 21-month period, but the DOR assessment credited only a 13-month period from September 1, 2001, through September 30, 2002.

[6] A large portion of this was IRP excise taxes, which Nor-Pac did not challenge.

[7] Apparently, the DOL mitigated the interest and waived the imposition of various penalties to arrive at the new figure.

[8] The parties' briefs both reference these events, but neither this notice of appeal nor the date that Nor-Pac appealed the revised assessment appears in the record.

statutory issue and affirming the DOL's April 7, 2003 revised assessment.[9]

¶8 On December 1, 2003, Nor-Pac filed a petition for review assigning error to the ALJ's Finding of Fact 9 and Conclusions of Law 8, 9, 10, 11, and 12.[10] The Director affirmed the ALJ's decision and adopted the ALJ's findings of fact and conclusions of law. The Director did not address Nor-Pac's constitutional challenge.

¶9 Nor-Pac appealed to the Pierce County Superior Court. That court denied Nor-Pac's summary judgment

---

[9] The ALJ noted that she did not have authority to decide the constitutional issue.

[10] Finding of Fact 9 set out Nor-Pac's total tax liability after the 13-month refund. The challenged conclusions of law state in pertinent part:

8. I do not find the statute [RCW 82.38.180] to be ambiguous, and I find the [DOL's] interpretation of the relevant language of the statute to be the correct interpretation. The point of reference is whether, at the time the tax was collected, it was collected or paid illegally or erroneously. There is no evidence that . . . the tax was either erroneously or illegally collected or paid. . . .

9. There are other circumstances in which special fuel tax might be illegally or erroneously collected—in other words when it should never have been collected in the first place [or] if the terminal operator collected more tax than the rate prescribed. . . .

10. I conclude that Nor-Pac has sought a refund pursuant to RCW 82.38.180(1). Nor-Pac was required to seek a refund in writing within thirteen months . . . .

11. RCW 82.38.190(3), WAC 308-77-104, and WAC 308-77-112 require that refund requests be in writing, state the specific grounds upon which the claim is founded, and attach documentation. The [DOL] apparently waived the written request requirement in this case. Nor-Pac argues that this should act as a general waiver of the requirement for writing, and a tacit admission that the special fuel tax was erroneously collected. I do not find that argument persuasive. . . . No purpose would be served in putting Nor-Pac through the exercise of [requesting a refund in writing] when the auditor had already determined the refund entitlement. In contrast, had the [DOL] waived the 13-month limitation, this would have been contrary to a substantive legislative directive.

12. Nor-Pac also argues that it would be unconstitutional to allow the [DOL] to go back five years to collect taxes due under RCW 82.38.170, but allow an offset for only a 13-month period. I do not have the authority to determine whether the statute . . . is constitutional. . . . Accordingly, I do not address Nor-Pac's constitutional argument.

AR at 165-67.

motion and affirmed the DOL's assessment. Nor-Pac timely appealed that order to this court.[11]

## ANALYSIS

STATUTORY ANALYSIS: RCW 82.38.180(1) AND (3)

¶10 Nor-Pac argues that it is entitled to a refund of taxes "erroneously or illegally collected or paid" under RCW 82-.38.180(3)[12] and that it has five years, or 60 months, to seek a refund of such taxes under RCW 82.38.190(3)(b). The DOL contends that Nor-Pac's refund was available under RCW 82.38.180(1), not subsection 3, and therefore it is entitled to only 13 months' PTO credit under RCW 82-.38.190(3)(a).

■ ■ ¶11 The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs our review. *See* RCW 34.05.510 (APA establishes the exclusive means of judicial review of agency action except in three situations not applicable here). We sit in the same position as the superior court and review the agency's decision, applying the standards in the APA directly to the agency record. *Eidson v. Dep't of Licensing*, 108 Wn. App. 712, 718, 32 P.3d 1039 (2001) (citing *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000)). We will grant relief from an agency order if we determine that the agency has erroneously interpreted or applied the law. Former RCW 34.05.570(3)(d) (1995). In reviewing an agency's interpretation or application of the law, we apply the error of law standard and may substitute our interpretation of the law for the agency's. *Postema*, 142 Wn.2d at 77.

---

[11] On November 5, 2004, the trial court entered a supplemental order on summary judgment to comply with RAP 9.12 and on November 29, Nor-Pac filed an amended notice of appeal. RAP 9.12 states in part that "[t]he order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered."

[12] RCW 82.38.180(3) permits a refund or tax credit for "[a]ny tax, penalty, or interest erroneously or illegally collected or paid." And RCW 82.38.190(3)(b) requires a written claim under RCW 82.38.180(3) to be filed within five years.

¶12 In interpreting a statute, we must give effect to legislative intent. Review begins with the plain language of the statute. *Tiger Oil Corp. v. Dep't of Licensing*, 88 Wn. App. 925, 930, 946 P.2d 1235 (1997) (citing *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995)). Where a statute is unambiguous, we determine legislative intent from the statutory language alone. *Tiger Oil*, 88 Wn. App. at 930 (citing *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994); *In re Eaton*, 110 Wn.2d 892, 898, 757 P.2d 961 (1988)). Whether we accord deference to an agency's construction of the statute depends on whether the statute is ambiguous. Where an agency is charged with the administration and enforcement of a statute, we give the agency's interpretation of an ambiguous statute great weight in determining legislative intent. *Tiger Oil*, 88 Wn. App. at 931 (citing *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992)). But absent ambiguity, there is no need for the agency's expertise in construing the statute and we do not defer to an agency determination that conflicts with the statute. *Tiger Oil*, 88 Wn. App. at 931.

¶13 SFTA supplements the motor vehicle fuel tax act (MVFTA)[13] by imposing a tax on all fuels not taxed under the MVFTA used for the propulsion of motor vehicles on state highways. RCW 82.38.010. RCW 82.38.180 sets out refunds and credits available under SFTA:

> Any person who has paid a special fuel tax either directly or to the vendor from whom it was purchased may file a claim with the department for a refund of the tax so paid and shall be reimbursed and repaid the amount of:
>
> (1) *Any taxes previously paid on special fuel used for purposes other than for the propulsion of motor vehicles upon the public highways in this state.*
>
> (2) Any taxes previously paid on special fuel exported for use outside of this state. Special fuel carried from this state in the

---

[13] Ch. 82.36 RCW.

fuel tank of a motor vehicle is deemed to be exported from this state. Special fuel distributed to a federally recognized Indian tribal reservation located within the state of Washington is not considered exported outside this state.

(3) *Any tax, penalty, or interest erroneously or illegally collected or paid.*

(4) Any taxes previously paid on all special fuel which is lost or destroyed, while applicant shall be the owner thereof, through fire, lightning, flood, wind storm, or explosion.

(5) Any taxes previously paid on all special fuel of five hundred gallons or more which is lost or destroyed while applicant shall be the owner thereof, through leakage or other casualty except evaporation, shrinkage, or unknown causes.

(6) Any taxes previously paid on special fuel that is inadvertently mixed with dyed special fuel.

(Emphasis added.) RCW 82.38.190(3) sets out the method for obtaining refunds or credits:

No refund or credit shall be approved by the department unless a written claim for refund or credit stating the specific grounds upon which the claim is founded is filed with the department:

(a) *Within thirteen months* from the date of purchase or from the last day of the month following the close of the reporting period for which the refundable amount or credit is due with respect to refunds or credits allowable under RCW 82-.38.180(1), (2), (4), and (5), and if not filed within this period the right to refund shall be forever barred.

(b) *Within five years* from the last day of the month following the close of the reporting period for which the overpayment is due with respect to the *refunds or credits allowable under RCW 82.38.180(3).*

(Emphasis added.)

¶14 Nor-Pac contends RCW 82.38.180(3) and RCW 82-.38.190(3)(b) grant it five years to pursue PTO refunds. At the very least, Nor-Pac asserts, the statutory terms are ambiguous and it is unclear under which subsection its claim falls.

■ ¶15 But up front payment of the special fuel tax is not an erroneously or illegally paid tax. *See* RCW 82-

.38.180(3); Conclusions of Law Nos. 8 and 9. In fact, the plain statutory language provides for refunds of the tax imposed on fuel used "for purposes other than for the propulsion of motor vehicles upon the public highways in this state." RCW 82.38.180(1). PTO is fuel used for purposes other than the propulsion of motor vehicles on the State's public highways.[14] Under the statute, Nor-Pac has an initial obligation to pay the gas tax,[15] but it is entitled to a refund of the PTO amount once it determines how much of the company's fuel is actually used for nonhighway purposes.

¶16 Nor-Pac asserts that *Tiger Oil*, the only case interpreting the statutes at issue here, supports its position. We disagree.

¶17 In *Tiger Oil*, we held that an unlicensed special fuel dealer was entitled to a direct refund for taxes it paid on special fuel when the fuel dealer sold the fuel for use for tax-free purposes. We reasoned that, unlike a licensed dealer, an unlicensed dealer was not required to charge its customers the tax. Thus, we held that the unlicensed dealer

---

[14] PTO fuel usage is "[f]uel used in a motor vehicle engine to operate auxiliary equipment provided that the fuel used is supplied from the propulsion tank of the motor vehicle." WAC 308-77-112(1); *see also* RCW 82.38.080(1)(d)(ii). Here, there is no dispute that Nor-Pac qualifies for the PTO exception.

[15] Under the 1998, 2001, and 2002 versions of former RCW 82.38.030(2)(a), the special fuel tax is imposed when

Special fuel is removed in this state from a terminal if the special fuel is removed at the rack unless the removal is to a licensed exporter for direct delivery to a destination outside of the state, or the removal is to a special fuel distributor for direct delivery to an international fuel tax agreement licensee under RCW 82.38.320.

(" 'Rack' means a mechanism for delivering special fuel from a refinery or terminal into a truck, trailer, railcar, or other means of nonbulk transfer." RCW 82-.38.020(20) (subsequent versions, including the current version of that subsection, are worded identically)). Similarly, former RCW 82.38.030(2) (1996) stated:

The tax shall be collected by the special fuel dealer and shall be paid over to the department as hereinafter provided: (a) With respect to all special fuel delivered by a special fuel dealer into supply tanks of motor vehicles or into storage facilities used for the fueling of motor vehicles at unbonded service stations in this state; or (b) in all other transactions where the purchaser is not the holder of a valid special fuel license issued pursuant to this chapter allowing the purchase of untaxed special fuel, except sales of special fuel for export.

Thus, Nor-Pac is required to pay the tax up front.

was entitled to a refund provided that it could prove the amount of taxes it paid and the amount due in refund. *Tiger Oil*, 88 Wn. App. at 937. In reaching our conclusion, we discussed the applicable statutory provisions:

> Tiger Oil . . . contends that it is entitled to interest under RCW 82.38.190(5), which states: "Interest shall be paid upon any refundable amount or credit due under [former] RCW 82-.38.180(3) [(1972)] at the rate of one percent per month . . . ." But, the Department correctly points out that even if Tiger Oil is entitled to a refund, it is not under [former] RCW 82-.38.180(3), which applies only to taxes "erroneously or illegally collected or paid." *Tiger Oil did not erroneously pay and the Department did not illegally collect the taxes Tiger Oil paid on the special fuel when it purchased it.* Instead, Tiger Oil's refund would be under [former] RCW 82.38.180(1): "Any taxes previously paid on special fuel used for purposes other than for the propulsion of motor vehicles upon the public highways in this state."

*Tiger Oil*, 88 Wn. App. at 937 (emphasis added).

¶18 Nor-Pac attempts to distinguish this portion of the opinion and argues that "Tiger Oil was not entitled to a refund under RCW 82.38.180(3) because Tiger Oil did not actually use the fuel for the tax-exempt purpose. Hence, it did not pay the tax erroneously or illegally. By contrast, *Nor-Pac paid the tax.*" Br. of Appellant at 13. There is no distinction between this case and *Tiger Oil. Both* Nor-Pac and Tiger Oil initially paid the tax. And the reason Tiger Oil was not entitled to a refund under former RCW 82-.38.180(3) was not that it did not use the fuel itself. Tiger Oil was entitled to a refund, but its right to a refund under former RCW 82.38.180(1) was based on a separate end-user's activities. Here, Nor-Pac is the purchaser and the end-user. Thus, *Tiger Oil* supports the DOL's position that RCW 82.38.180(1) governs Nor-Pac's refund rights.

¶19 Nor-Pac asserts that RCW 82.38.180(3) entitles it to a five-year credit. But Nor-Pac never filed a PTO claim

with the DOL.[16] And RCW 82.38.190(3) precludes a refund without a timely claim: "No refund or credit shall be approved by the department unless a written claim for refund or credit stating the specific grounds upon which the claim is founded is filed with the department."[17] Thus, Nor-Pac's PTO request for a refund under RCW 82-.38.190(3) was not before the superior court and it is not properly before this court.

¶20 Nor-Pac is, however, entitled to a refund under RCW 82.38.180(1), not RCW 82.38.180(3). The DOL's audit to recalculate taxes Nor-Pac owed opened the time from January 1, 2001, to September 30, 2002, for recalculation of Nor-Pac's tax obligation during that period. This process included recalculating Nor-Pac's initial tax obligation for that period. It also required recomputation of any credits or refunds to which Nor-Pac was entitled in order to accurately calculate the (net) amount Nor-Pac owed.

¶21 Because Nor-Pac did not initiate recalculation by filing a claim for a PTO tax credit under RCW 82.38.190(3), the 13-month limitation set forth in that statute did not apply. The DOL commenced the audit and opened a 21-month recalculation audit period from January 1, 2001, through September 30, 2002. See RCW 82.38.190(2) ("Any amount determined to be refundable by the department under RCW 82.38.180 shall first be credited on any amounts then due and payable from a person to whom the refund is due."). We remand so that the DOL may recalculate Nor-Pac's tax assessment subject to a 21-month PTO credit earned during the audit period January 1, 2001, and September 30, 2002.

EQUAL PROTECTION AND DUE PROCESS

¶22 Nor-Pac contends that RCW 82.38.190(3)(a), which requires that a written claim for refund or credit under RCW 82.38.180(1) be filed within 13 months, violates equal

---

[16] Nor-Pac does not challenge the ALJ's Finding of Fact No. 4 which states that Nor-Pac never filed a claim for PTO credits.

[17] See also WAC 308-77-104.

protection and procedural due process because the DOL, in contrast, has five years to seek tax deficiencies under RCW 82.38.170(8).

¶23 A litigant lacks standing to challenge a statute on constitutional grounds unless the litigant is harmed by the particular provision it claims is unconstitutional. *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992). Our holding that Nor-Pac is entitled to a refund for the entire audit period—the same period for which the DOL seeks recalculation of taxes—eliminates the harm Nor-Pac alleges.

¶24 We assume without deciding that Nor-Pac has standing to raise its equal protection and due process claims. Under the APA, we may review a challenge that an agency "order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied." Former RCW 34.05.570(3)(a). But we start with the presumption that statutes are constitutional. *Schoonover v. State*, 116 Wn. App. 171, 182, 64 P.3d 677 (2003) (citing *State v. Hennings*, 129 Wn.2d 512, 524, 919 P.2d 580 (1996)). " 'A party challenging the constitutionality of a statute has the heavy burden of proving its unconstitutionality beyond a reasonable doubt.' " *Schoonover*, 116 Wn. App. at 182 (quoting *State v. Blank*, 131 Wn.2d 230, 235, 930 P.2d 1213 (1997)).

EQUAL PROTECTION

¶25 To show a violation of the equal protection clause under the fourteenth amendment to the United States Constitution and article I, section 12 of the Washington State Constitution, a party must establish that the challenged statute treats unequally two similarly situated classes of people. *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 634-35, 911 P.2d 1319 (1996); *see also In re Pers. Restraint of Knapp*, 102 Wn.2d 466, 473, 687 P.2d 1145 (1984) ("The equal protection clause requires that persons similarly situated with respect to the legitimate purposes of the laws receive like treatment.").

¶26 Nor-Pac assumes that the DOL and it are similarly situated with respect to the law. But it cites no authority or argument for this proposition and it is not obvious to us that it is so. *See* RAP 10.3(a)(5) (requiring that a party present an argument in support of the issues for review, supported by citations to legal authority and to the relevant portions of the record). *See also Fria v. Dep't of Labor & Indus.*, 125 Wn. App. 531, 535, 105 P.3d 33 (2004) (" 'naked castings into the constitutional sea' do not command judicial consideration and discussion") (quoting *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)), *review denied*, 154 Wn.2d 1018 (2005). Thus, Nor-Pac has failed to adequately present its equal protection argument for our review.

PROCEDURAL DUE PROCESS

¶27 Nor-Pac also contends that the taxing statutes deny it procedural due process. We set out its due process argument in its entirety below:

> Ordinarily, the Legislature is given ample authority to make classifications under the law and to provide for a limitation period for tax refunds. But such limitations must still afford the taxpayer procedural due process. *Am. Steel & Wire Co. of New Jersey v. State*, 49 Wn.2d 419, 302 P.2d 207 (1956).[18]

Br. of Appellant at 14. Nor-Pac does not provide further analysis other than to assert that it was denied due process because it did not know that it was entitled to a tax refund until the DOL informed Nor-Pac. But RAP 10.3(a)(5) requires that a party present an argument in support of the issues for review and support the argument with cita-

---

[18] That case states:

> A remedy was afforded respondent; that remedy is declared by the statute to be exclusive. The establishment of an exclusive remedy against the state for the recovery of taxes illegally collected is not an invasion of constitutional rights, if the remedy afforded is fair and adequate and does not deprive the taxpayer of procedural due process.

*Am. Steel*, 49 Wn.2d at 425 (citing *Anniston Mfg. Co. v. Davis*, 301 U.S. 337, 57 S. Ct. 816, 81 L. Ed. 1143 (1937)). Accordingly, our Supreme Court held that the one-year limit for the taxpayer to seek a refund of the business and occupation taxes did not violate due process.

tions to legal authority and to the relevant portions of the record. Even assuming that Nor-Pac lacked knowledge of the relevant statutes, Nor-Pac cites no authority for the proposition that a party's lack of knowledge of a statutorily established procedure demonstrates the constitutional deficiency of that procedure. Nor-Pac fails to adequately present its due process argument for our review.

ATTORNEY FEES

¶28 Finally, Nor-Pac seeks reasonable attorney fees at trial and on appeal under RCW 4.84.350 (part of the equal access to justice act) and RAP 18.1.[19]

> Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

RCW 4.84.350(1). "Qualified party" includes a corporation, association, or organization whose net worth did not exceed $5 million at the time it filed the initial petition for judicial review. RCW 4.84.340(5)(b). Under this statute, a party is considered to have prevailed only if that party obtains relief on a "significant issue." *Citizens for Fair Share v. Dep't of Corr.*, 117 Wn. App. 411, 436, 72 P.3d 206 (2003) (citing *Hunter v. Univ. of Wash.*, 101 Wn. App. 283, 2 P.3d 1022 (2000), *review denied*, 142 Wn.2d 1021 (2001)), *review denied*, 150 Wn.2d 1037 (2004); *see also* RCW 4.84.350(1).

---

[19] RAP 18.1 states in part:

    **(a) Generally.** If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court.

    **(b) Argument in Brief.** The party must devote a section of its opening brief to the request for the fees or expenses.

¶29 Nor-Pac is a qualifying party because its net worth does not exceed $5 million. It is the prevailing party because it is entitled to PTO credits for the entire 21-month period. The DOL opened to audit and recalculated Nor-Pac's tax liability. This period is eight months longer than the audit and recalculation period available to taxpayer-initiated actions under RCW 82.38.180(1).

¶30 We remand so that the additional 8-month PTO credit may be applied to Nor-Pac's tax assessment for the 21-month period the DOL sought to recalculate. We also remand for the superior court to determine the amount of attorney fees and costs to which Nor-Pac is entitled to for the proceedings below and on appeal.

¶31 Reversed and remanded.

MORGAN and HOUGHTON, JJ., concur.

Reconsideration denied October 31, 2005.