**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE HONORABLE STEVE HOBBS,[†] in his official capacity as Secretary of State of Washington, <br><br> Respondent, <br><br> v. <br><br> GERALD HANKERSON, <br><br> Appellant, <br><br> JESSE WINEBERRY SR.; DR. TERRYL ROSS; APRIL FEATHERKILE; LIVIO DE LA CRUZ; REGIS COSTELLO; MICHAEL MCKEE; DEMOND JOHNSON; TIM EYMAN; KARIM ALI; GEORGENE FARIES; JULIA BOBADILLA-MELBY; KAN QIU; and LARRY JENSEN, <br><br> Defendants. | No. 83302-2-I <br><br> DIVISION ONE <br><br><br> PUBLISHED OPINION |

BOWMAN, J. — Washington citizens enjoy the right to enact or change laws by petitioning the legislature under article II, section 1 of the Washington State Constitution. This process requires that sponsors of an initiative submit a petition with "valid signatures" of registered voters to the Office of the Secretary of State (Secretary). Gerald Hankerson appeals a Thurston County Superior Court judgment declaring that the Secretary need not accept electronic voter signatures

_____

[†] Former Secretary of State Kim Wyman filed the original complaint for declaratory judgment. Steve Hobbs succeeded Wyman on November 22, 2021. We grant the attorney general's unopposed motion to substitute Hobbs for Wyman.

Citations and pin cites are based on the Westlaw online version of the cited material.

No. 83302-2-I/2

on initiative petitions. Because the Secretary has the responsibility to determine the validity of initiative petition signatures and the discretion to accept electronic signatures, we affirm.

FACTS

Hankerson is the Pacific Northwest regional president for the National Association for the Advancement of Colored People (NAACP). In 2020, he cosponsored "Washington Anti-Discrimination Act" Initiative 1234 (I-1234) to the legislature.[1] The stated purpose of I-1234 is " 'to prohibit discrimination against all Washington state residents in public education, public employment, public contracting, and public health and safety without any quotas or preferential treatment.' "

According to Hankerson, health risks associated with the COVID-19 pandemic[2] prevented volunteers from obtaining original, handwritten, "wet ink" signatures for the I-1234 petition. So he asked the Secretary to accept electronic signatures[3] using DocuSign instead. DocuSign is a secure, online platform that allows a person to sign a document "using their index finger or a stylus just as they would a pen." Hankerson wanted to submit a printed copy of the electronic signatures supporting I-1234 to the Secretary.

---

[1] Hankerson first cosponsored Initiative 1776, a similar initiative to the people. He later withdrew that initiative and reformulated his petition to the legislature as I-1234.

[2] COVID-19 is the World Health Organization's official name for "coronavirus disease 2019," first discovered in December 2019 in Wuhan, China. COVID-19 is a severe, highly contagious respiratory illness that quickly spread throughout the world.

[3] The Uniform Electronic Transactions Act, RCW 1.80.010(10), defines "electronic signature" as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."

2

No. 83302-2-I/3

The Secretary eventually rejected Hankerson's proposal because "[e]very signature submitted on [an initiative] petition sheet must be checked against the voter's signature on file," and the Secretary could not verify the validity of electronic signatures under its existing protocols and procedures. According to the Elections Division director and a Washington State Patrol forensic document examiner, the individualized features of wet ink signatures are critical to the signature verification process. Both expressed concern that "there are likely to be significant differences in the characteristics of [an electronic] signature with the [ink] signature in the voters' registration file," compromising the signature comparison process. They were also concerned that electronic signatures may be forged or manipulated. Hankerson's proposal amplified these concerns because the Secretary could not trace printed copies of signatures to their original source without associated metadata.

To help "resolve this matter quickly and in a manner that ensures all interested parties have an opportunity to participate," the Secretary notified Hankerson that it would "soon be filing a declaratory judgment action." It then filed a complaint in Thurston County Superior Court under the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, asking the court to declare that the Secretary "is not required to treat electronic signature representations as signatures when verifying and canvassing signatures on initiative petitions."[4]

---

[4] The complaint for declaratory judgment listed several sponsors of different initiatives as interested parties. Only Hankerson is appealing the declaratory judgment order.

3

No. 83302-2-I/4

Meanwhile, Hankerson petitioned the Washington Supreme Court to issue a writ of mandamus directing the Secretary to accept electronic signatures.[5] Hankerson argued that the pandemic disproportionally affected people of color and low-income communities and that without the use of electronic signatures, the Secretary unjustly impeded their constitutional freedom to petition. A Supreme Court commissioner dismissed Hankerson's writ of mandamus, ruling that Hankerson had an adequate remedy at law in the superior court.

Hankerson then moved for summary judgment in superior court. The Secretary cross moved for summary judgment. The court denied Hankerson's motion for summary judgment, granted summary judgment for the Secretary, and issued a judgment declaring that the Secretary "is not required to accept electronic signatures [or] printed copies of electronic signatures on initiative petitions."

Hankerson appeals.

ANALYSIS

Hankerson argues the trial court erred "as a matter of law" by declaring that the Secretary need not accept electronic signatures on initiative petitions.[6] We disagree.

---

[5] The NAACP was also a petitioner.

[6] Hankerson also argues the Secretary abused its discretion in refusing to accept electronic signatures during a pandemic and refusing to investigate the DocuSign program. Whether the Secretary abused its discretion under these circumstances is beyond the scope of the question raised for declaratory judgment, which is only whether the Secretary has the discretion to reject electronic signatures. As a result, we do not address those arguments.

4

No. 83302-2-I/5

We review orders, judgments, and decrees under the UDJA de novo. Borton & Sons, Inc. v. Burbank Props., LLC, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). We also review a trial court's order granting a motion for summary judgment de novo. Frisino v. Seattle Sch. Dist. No. 1, 160 Wn. App. 765, 776, 249 P.3d 1044 (2011). We undertake the same inquiry as the trial court and consider the evidence and the reasonable inferences from it in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). Summary judgment is appropriate where there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c); Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012). By cross moving for summary judgment, the parties concede there are no material issues of fact. Pleasant v. Regence BlueShield, 181 Wn. App. 252, 261, 325 P.3d 237 (2014) (citing Tiger Oil Corp. v. Dep't of Licensing, 88 Wn. App. 925, 930, 946 P.2d 1235 (1997)).

Statutory interpretation is an issue of law also subject to de novo review. Spokane County v. Dep't of Fish & Wildlife, 192 Wn.2d 453, 457, 430 P.3d 655 (2018). When interpreting a statute, we first look to its plain language. HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (citing State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007)). We give the words in a statute their common and ordinary meaning. Garrison v. Nursing Bd., 87 Wn.2d 195, 196, 550 P.2d 7 (1976). "A statute that is clear on its face is

5

No. 83302-2-I/6

not subject to judicial construction."  State v. J.M., 144 Wn.2d 472, 480, 28 P.3d 720 (2001).  Instead, we are " 'required to assume the Legislature meant exactly what it said and apply the statute as written.' "  HomeStreet, 166 Wn.2d at 452 (quoting Duke v. Boyd, 133 Wn.2d 80, 87, 942 P.2d 351 (1997)).  These rules of statutory construction also apply to administrative rules and regulations.  Dep't of Licensing v. Cannon, 147 Wn.2d 41, 56, 50 P.3d 627 (2002).

Under article II, section 1(a) of the Washington State Constitution, initiative petitions must "include the full text of the measure proposed," have the required number of "valid signatures of legal voters,"[7] and be timely filed with the Secretary.  The Secretary is then "guided by the general laws in submitting the same to the people until additional legislation shall especially provide therefor."  Id. § 1(d).

Under RCW 29A.72.170, the Secretary must accept and file a petition that meets the requirements in article II, section 1(a).  RCW 29A.72.230 then requires the Secretary to "verify and canvass" the names and signatures on the petition.  But neither article II, section 1 nor chapter 29A.72 RCW define "valid signature."  So we look to the administrative code to determine the procedures the Secretary must use to verify signatures.

Under WAC 434-379-012(3)(a), the Secretary must accept a petition signature if it is "handwritten and matches the signature in the voter registration record according to the standards in WAC 434-379-020."  Under WAC 434-379-

---

[7] The number of valid signatures of legal voters required "shall be equal to eight percent of the votes cast for the office of governor at the last gubernatorial election."  Art. II, § 1(a).

6

020, the Secretary "must" evaluate particular characteristics of petition signatures to "determine whether they are by the same writer." That rule reiterates that the petition signature should be handwritten and that its style, general appearance, individual letter proportions, spacing, slants, and other distinctive traits agree with voter registration records. Id.

Article II, section 1(a) of our constitution requires that a petition contain valid signatures of registered voters. The legislature delegated to the Secretary the responsibility to determine whether a petition signature is valid. And the administrative code gives the Secretary broad authority in making that determination. Nothing in the constitution, statutes, or administrative code requires the Secretary to accept electronic signatures.[8] Indeed, under the Uniform Electronic Transactions Act, the legislature empowered the Secretary to create the specific manner, format, process, and procedure by which it can securely use electronic signatures. RCW 1.80.170(1), (2).[9] And even there, the legislature was careful to provide that "this chapter does not require a

---

[8] Compare with RCW 29A.04.255, which requires the Secretary to accept, under certain circumstances, the following electronic submissions: (1) declarations of candidacy, (2) county canvass reports, (3) voters' pamphlet statements, (4) arguments for and against ballot measures that will appear in a voters' pamphlet, (5) requests for recounts, (6) certification of candidates and measures by the Secretary, (7) direction by the Secretary for the conduct of a recount, (8) requests for ballots, and (9) any other election related document authorized by rule adopted by the Secretary under RCW 29A.04.611.

[9] The Uniform Electronic Transactions Act applies to electronic signatures relating to government "transactions." RCW 1.80.020. A "transaction" is "an action or set of actions occurring between two or more persons relating to the conduct of business, commercial, or governmental affairs." RCW 1.80.010(18). The parties do not contest that the statute applies to gathering signatures in support of an initiative petition.

governmental agency of this state to use or permit the use of . . . electronic signatures." RCW 1.80.170(3).[10]

The trial court did not err in concluding that the Secretary need not accept electronic signatures or printed copies of electronic signatures on initiative petitions. We affirm.

_Brennan, J_

WE CONCUR:

_Mann, J._                          _Appelwick, J.P.T._

---

[10] Hankerson also appears to argue that the statutory scheme giving the Secretary discretion to reject electronic signatures is unconstitutional as applied. But in his reply brief, Hankerson expressly disavows such a claim, so we do not address it ("while the [Secretary's] Response Brief [on appeal] characterizes Mr. Hankerson's claim as being that a statute is unconstitutional, that characterization misses [Hankerson's] point").