81 P.3d 895 (2003)
119 Wash.App. 432
William COLWELL and Lurena Colwell, husband and wife, and the marital community comprised thereof, Respondents,
v.
David ETZELL and Jane Doe Etzell, husband and wife, and the marital community comprised thereof, Appellants.
No. 21733-7-III.
Court of Appeals of Washington, Division 3, Panel Six.
December 23, 2003.
*896 Paul J. Wasson, Attorney at Law, Spokane, WA, for Appellants.
Aaron L. Lowe, Aaron L. Lowe & Associates PS, Spokane, WA, for Respondents.
SCHULTHEIS, J.
A partial summary judgment was granted to William and Lurena Colwell quieting title to an easement through David Etzell's property. Mr. Etzell appeals the subsequent award of attorney fees and costs. He challenges the trial court's finding that he violated RCW 4.24.630[1] by intentionally interfering with the Colwells' easement. Because we find that Mr. Etzell did not violate RCW 4.24.630, we reverse the award of attorney fees and costs.

FACTS
In summer 1999, the Colwells filed in Stevens County a summons and complaint to quiet title to an easement crossing Mr. Etzell's land. Although Mr. Etzell was initially represented by an attorney who filed the original answer to the complaint, his counsel later withdrew, and he remained pro se through depositions, his response to the Colwells' motion for summary judgment, a telephonic argument opposing summary judgment, and the trial judgment.
The parties own adjoining pieces of land. The Colwells purchased their parcel in 1981 from Nelson Lumber Company, and were given a permanent non-exclusive easement over the adjoining parcel for ingress and egress and utilities. The former owners of Mr. Etzell's land purchased the adjoining parcel from Nelson Lumber Company later the same year, subject to the Colwells' easement. Although Mr. Etzell claims to have actually lived on this parcel for at least 10 *897 years prior to owning it, he gained title to it by quitclaim deed in 1995.
Mr. Etzell states that in the spring of 1998 heavy runoff from springs located on a different parcel adjoining his property caused severe drainage problems on his property that required him to ditch and culvert a portion of a road across his property to avoid serious damage. He ditched and positioned culverts in five different places on the road. One day, as Mr. Etzell was making the repairs to the road, Mr. Colwell approached him wearing a gun. According to Mr. Etzell, Mr. Colwell was very irate, screamed at him, and told him what "[he] could and couldn't do." Clerk's Papers (CP) at 53. Mr. Etzell declared he had never met the Colwells, had only seen their vehicle go through his property three to five times during the 15-year period he lived on the property, and he was very intimidated by the situation.
Mr. Etzell also claims that since the easement across his property was generally created by the common grantor, Nelson Lumber Company, and since it was not specifically described or surveyed, he had no idea the particular road he was repairing was the existing easement. He further claims that even while repair work was being done, Mr. Colwell was able to use the road at all times to access his property. Prior to his withdrawal, Mr. Etzell's former counsel, Robert Simeone, communicated several times with the Colwells' attorney in an attempt to clarify and formally establish an easement access acceptable to both parties without incurring the expense of a survey.
Because of the repair work, the Colwells claimed they had to use a different road crossing another adjacent landowner's property  to which they had no easement  to access their property. Finally, they had surveyors determine property lines and mark where they believed the easement had always been, and filed a motion for summary judgment to quiet title to their easement. The court granted partial summary judgment in favor of the Colwells quieting title to their easement and reserved for trial the issue of damages necessary to restore the easement to usable condition. Prior to trial, the road was repaired and completed on the easement at Mr. Etzell's expense, removing the need for the Colwells to seek damages. Instead, they sought costs and attorney fees pursuant to RCW 4.24.630.
Both parties used Standing Rock Homeowners Ass'n v. Misich, 106 Wash.App. 231, 23 P.3d 520, review denied, 145 Wash.2d 1008, 37 P.3d 290 (2001) to support their arguments regarding the question of attorney fees, costs, and the correct interpretation of RCW 4.24.630 as it applies to Mr. Etzell's alleged intentional interference with the Colwells' use of the easement across his property. Ultimately, the trial court awarded the Colwells costs and attorney fees totaling $9,341.10. This appeal followed.

INTENTIONAL INTERFERENCE WITH THE EASEMENT
Mr. Etzell claims that the trial court erred in finding that he had intentionally interfered with the Colwells' use of their easement by skewing the proper interpretation of RCW 4.24.630 and Standing Rock and misapplying the law to the facts of the case at bar. As a rule, in Washington all findings of fact are reviewed under the substantial evidence test. Panorama Village Homeowners Ass'n v. Golden Rule Roofing, Inc., 102 Wash.App. 422, 425, 10 P.3d 417 (2000). However, when a case turns on the interpretation of a statute by the court, we must first apply a de novo standard of review. Berger v. Sonneland, 144 Wash.2d 91, 104-05, 26 P.3d 257 (2001). Historical facts receive deference, but the statement of the law and the application of that law to the historical facts (to determine ultimate facts) is reviewed de novo. Franklin County Sheriff's Office v. Sellers, 97 Wash.2d 317, 330, 646 P.2d 113 (1982).
RCW 4.24.630(1) states:
Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. For purposes of this section, a *898 person acts "wrongfully" if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act. Damages recoverable under this section include, but are not limited to, damages for the market value of the property removed or injured, and for injury to the land, including the costs of restoration. In addition, the person is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs.
(Emphasis added.)
This statute is precisely and unambiguously worded. "[A]s the plain language of RCW 4.24.630(1) envisions wrongful conduct, any violation of that statute is analogous to an intentional tort, like trespass to personal property or conversion." Standing Rock, 106 Wash.App. at 246, 23 P.3d 520. While recognizing factual differences between Standing Rock and the present case, the trial court dismissed these differences as immaterial. We do not agree. In Standing Rock, the plaintiff, an association of property owners in a Chelan County development, had placed a number of gates on an easement passing through its property, as well as on the land of an adjoining nonparty, to deter trespass and vandalism. Id. at 236, 23 P.3d 520. The holder of the easement repeatedly entered onto the Standing Rock land and destroyed the gates. Id. at 242, 23 P.3d 520. The court held that the gates were reasonable burdens on the easement and that the defendant holder of the easement was liable for all the damages caused by his actions.
In the current case, the trial court reasoned that Standing Rock "supports the idea that it is not so much the `trespass' or `entry upon the land of another,' but the (wrongful) invasion of a right in land that is protected by RCW 4[.]24[.]630." CP at 72. The trial court's analysis was supported by its determination that the decision in Standing Rock did not turn upon the entry upon the land of another, but instead "upon the wrongful invasion of the real property interest held by the plaintiffs [Standing Rock] in not having the easement leading to their [whose?] property overburdened, which easement happened to be located on others' land." CP at 72 (emphasis added). A careful reading of the facts in Standing Rock refutes this reasoning. The easement was not leading to Standing Rock's property; it was located on Standing Rock's property and not located on another's land. The defendant wrongfully invaded Standing Rock's property (trespass) and repeatedly destroyed Standing Rock's gates on the easement he held, because he felt the gates were overburdening the easement leading to his land. The statute's premise is that the defendant physically trespasses on the plaintiff's land. There was no physical trespass in the present case.
In reaching its conclusion that gates were a reasonable burden upon the easement, the trial court in Standing Rock conceded that the easement deed was silent on the subject of gates. Standing Rock, 106 Wash.App. at 241, 23 P.3d 520. "[I]f the easement is ambiguous or even silent on some points, the rules of construction call for examination of the situation of the property, the parties, and surrounding circumstances." Rupert v. Gunter, 31 Wash.App. 27, 31, 640 P.2d 36 (1982). Although an inconvenience to the easement holder, "[w]hen the owner of a servient estate is being subjected to a greater burden than that originally contemplated by the easement grant, the servient owner has the right to restrict such use and to maintain gates in a reasonable fashion necessary for his protection, as long as such gates do not unreasonably interfere with the dominant owner's use." Id.
Mr. Etzell owns the land on which the easement is located. Beebe v. Swerda, 58 Wash.App. 375, 384, 793 P.2d 442 (1990). The owner of a servient estate has the right to use his land for any purpose not inconsistent with its ultimate use for reserved easement purposes. Id. In this case, the location of the easement was neither specified nor surveyed at the time it was granted, and the deed was silent on the subject of maintenance, repair, or any contemplated burdens. In describing the situation of the property and the surrounding circumstances, Mr. Etzell claimed  and the Colwells did not challenge *899  increasingly serious damage to a road on his property by runoff from an uphill adjoining parcel. Since under the Colwells' deed no mention of responsibility or authority for maintaining the easement was made, the court should have found that, like in Standing Rock, the owner of the servient estate, Mr. Etzell, could maintain the road on his land in a reasonable fashion necessary for its protection. Even if Mr. Etzell had been confident this particular road was the Colwells' easement, his actions in providing drainage and avoiding further erosion were not inconsistent with the future use of the easement.
When the trial court has weighed the evidence, review is limited to determining whether the trial court's findings are supported by substantial evidence and, if so, whether the findings support the court's conclusions of law and judgment. Panorama Village, 102 Wash.App. at 425, 10 P.3d 417. Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the declared premise. Id. The party challenging a finding of fact bears the burden of showing that it is not supported by the record. Id.
The trial court's finding of intentional interference relies solely on its interpretation of RCW 4.24.630, rather than on the information contained in affidavits, depositions, and arguments of the parties. No evidence contradicted Mr. Etzell's claim of serious drainage and erosion problems. No evidence was presented showing that Mr. Etzell was seeking to either intentionally, unreasonably, or permanently interfere with or terminate the Colwells' easement. On the contrary, evidence indicated efforts by Mr. Etzell to attempt to clarify and formally establish an easement access acceptable to both parties without incurring the expense of a survey. Ultimately, no evidence in the record supports the finding of intentional interference.
Although neither party mentioned the common enemy doctrine, Mr. Etzell's authority to repair the road and protect his property is also recognized under this well-settled law. "If one in the lawful exercise of his right to control, manage or improve his own land, finds it necessary to protect it from surface water flowing from higher land, he may do so, and if damage thereby results to another, it is damnum absque injuria." Cass v. Dicks, 14 Wash. 75, 78, 44 P. 113 (1896).[2] The Washington Supreme Court recognizes three exceptions to the common enemy doctrine. One provides that even though a downhill landowner can lawfully repel surface water from his or her land, it must be done without blocking a natural watercourse or drainway. Currens v. Sleek, 138 Wash.2d 858, 862, 983 P.2d 626, 993 P.2d 900 (1999). A second exception provides that an uphill landowner cannot lawfully collect water in an artificial channel, then discharge it on adjoining lands. Id. A third exception, and the only one that arguably applies here, is referred to as a "due care exception," and requires that the landowner act in good faith and with due care to avoid unnecessary damage to the property of others. Id. at 864-65, 983 P.2d 626.
In practical terms, the court in Currens held that a landowner may improve his or her land with impunity (subject to local land use and permitting requirements) without liability for damages to another's land as long as the landowner acts in good faith and any damage is not in excess of that called for by the particular project. Id. at 864, 983 P.2d 626. The record provides no evidence that Mr. Etzell undertook repair of the road in bad faith, and any damage that occurred to the easement was temporary. Consequently, he was entitled to protect his property by ditching and installing culverts to the easement road.
Because RCW 4.24.630 is premised upon a wrongful invasion or physical trespass upon another's property, a commission of intentional and unreasonable acts upon another's property, and subsequent destruction of physical or personal property by the invader to another's property, the statute does not *900 support the finding of intentional interference by Mr. Etzell in the Colwells' easement to their land.

ATTORNEY FEES AND COSTS
The trial court awarded the Colwells attorney fees and costs under RCW 4.24.630. Attorney fees and costs are permitted only if based on a statutory, contractual, or equitable ground. In re Impoundment of Chevrolet Truck, 148 Wash.2d 145, 160, 60 P.3d 53 (2002); King County v. Squire Inv. Co., 59 Wash.App. 888, 896, 801 P.2d 1022 (1990). "In a typical quiet title action, there is no statutory basis for awarding attorney fees to prevailing parties." King County, 59 Wash.App. at 896, 801 P.2d 1022.
RCW 4.24.630 requires a showing of wrongful (intentional and unreasonable) conduct resulting in some dollar amount of damages. Standing Rock, 106 Wash.App. at 244-45, 23 P.3d 520. In other words, without a showing of damages the claim has no value.
Here, the trial court based the award of attorney fees and costs on its interpretation of RCW 4.24.630 and Standing Rock. As analyzed above, the Colwells failed to show the requisite wrongful conduct  intentional and unreasonable invasion upon another's land committing acts of waste or injury. After summary judgment was granted quieting title of the easement in the Colwells, Mr. Etzell removed the culverts he had placed in the road and reconstructed a new gravel road in that same location at his own expense. The Colwells claim no damages. Since no statutory authority awards attorney fees to prevailing parties in quiet title actions, and the Colwells were not entitled to attorney fees and costs under RCW 4.24.630, the award was in error. King County, 59 Wash.App. at 896, 801 P.2d 1022.
The Colwells also request attorney fees on appeal. Here again, they rely solely on the trial court's interpretation of RCW 4.24.630 as the basis for their request for attorney fees upon appeal. "Where a statute allows an award of attorney fees to the prevailing party at trial, the appellate court has inherent authority to make such an award on appeal." Standing Rock, 106 Wash.App. at 247, 23 P.3d 520. As discussed at length above, the trial court incorrectly interpreted and applied both the statute and Standing Rock to the present case. Thus, the Colwells have no basis for attorney fees upon appeal.
Attorney fees and costs reversed.
I CONCUR: KURTZ, J.
SWEENEY, J. (concurring).
I concur in the result reached by the majority. But I disagree with the analysis leading to that result and, therefore, write separately.
1. STANDARD OF REVIEW
This case was resolved by the court's summary judgment in favor of William and Lurena Colwell. And we review a summary judgment de novo. Hill v. Cox, 110 Wash.App. 394, 402, 41 P.3d 495, review denied, 147 Wash.2d 1024, 60 P.3d 92 (2002). The court's findings of fact are, then, superfluous. If the material facts were disputed, then summary judgment was not appropriate. Hubbard v. Spokane County, 146 Wash.2d 699, 706 n. 14, 50 P.3d 602 (2002); Hill, 110 Wash.App. at 402-03, 41 P.3d 495.
Here, the material facts were not disputed. And so it was appropriate for the trial judge to resolve the questions presented (quiet title and attorney fees) as a matter of law. Standing Rock Homeowners Ass'n v. Misich, 106 Wash.App. 231, 239, 23 P.3d 520, review denied, 145 Wash.2d 1008, 37 P.3d 290 (2001). We do not review for substantial evidence.
2. INTENTIONAL CONDUCT  COMMON ENEMY DOCTRINE
Further, neither party has raised the common enemy doctrine or its exceptions, either here or in the trial court, and for good reason. The discussion is entirely hypothetical. David Etzell presented no evidence that his actions in ditching and culverting the easement road were necessary. As the respondent to a summary judgment motion, he had the burden to establish the elements of any defense. CR 56(e).
*901 The servient estate owner has the right to use his or her land for any purpose so long as it does not interfere with the dominant landowner's enjoyment of the easement. Standing Rock, 106 Wash.App. at 241, 23 P.3d 520. It is not contested that Mr. Etzell's activities interfered with the Colwells' enjoyment of their easement. Why, how, and in what manner he did so is again ultimately irrelevant to the question before us. Cole v. Laverty, 112 Wash.App. 180, 185, 49 P.3d 924 (2002).
Even more significantly here, the easement has been restored and the Colwells' title to that easement confirmed by the court. The only issue is then attorney fees under RCW 4.24.630(1).
3. ATTORNEY FEES  RCW 4.24.630(1)
The general rule is that attorney fees are not awarded unless authorized by contract, by statute, or in certain equitable actions. Haner v. Quincy Farm Chems., Inc., 97 Wash.2d 753, 757, 649 P.2d 828 (1982).
I agree with the majority's rejection of RCW 4.24.630 as a ground for attorney fees. The plain language of the statute requires a trespass ("[e]very person who goes onto the land of another"). RCW 4.24.630(1). I also agree that the majority correctly distinguishes the Standing Rock case. There, we applied RCW 4.24.630 where the easement holder entered onto the servient estate (the land of another) and removed gates (personal property). Here, the owner of the servient estate was on his own land.
Neither is a fee award supportable on equitable grounds. Three elements are needed in order to create an equitable right to attorney fees. If a wrongful act or omission by A exposes B to litigation with C, an unrelated third party, the court may award B's fees in that litigation. Thomas v. Gaertner, 56 Wash.App. 635, 784 P.2d 575 (1990).
I would, accordingly, conclude that even if Mr. Etzell's conduct was intentional or wrongful, the Colwells are not entitled to attorney fees in this quiet title action. King County v. Squire Inv. Co., 59 Wash.App. 888, 896, 801 P.2d 1022 (1990).
NOTES
[1] The Laws of 1999, chapter 248, section 2 amendment to this statute does not affect the outcome of this action.
[2] According to BLACK'S LAW DICTIONARY 354 (5th ed.1979), damnum absque injuria means "[l]oss, hurt, or harm without injury in the legal sense; that is, without such breach of duty as is redressible by an action. A loss which does not give rise to an action for damages against the person causing it."