IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| EAGER BEAVER, INC., a Washington Corporation, | ) ) ) | No. 30827-8-III |
| Appellant, | ) ) ) | |
| v. | ) ) ) | |
| BULLDOG TRUCKING & EXCAVATION, LLC, a Washington Limited Liability Company, and MICHAEL AND "JANE DOE" SUTTON, individually, | ) ) ) ) ) ) ) | |
| Respondents, | ) ) | UNPUBLISHED OPINION |
| CINDY AND "JOHN DOE" BEAVERT, individually, SEATTLE IRON & METALS CORPORATION, a Washington Corporation, | ) ) ) ) ) | |
| Defendants. | ) | |

SIDDOWAY, J. — Eager Beaver Inc. appeals the trial court's decision, following a

bench trial, that Eager Beaver did not prove wrongful conduct on the part of two

defendants required to recover treble damages under RCW 4.24.630, a trespass statute. It

challenges both the trial court's construction of the statute and the sufficiency of the

record to support the court's conclusion. While we do not entirely agree with the trial

court's construction of the statute, we reject Eager Beaver's construction. And under any construction of the statute advanced by the parties, the trial court's findings—all of which we treat as verities—support the result. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 2004, Cindy Beavert hired Eager Beaver Inc. to log several acres of her property, located in Leavenworth. Among equipment used by Eager Beaver to perform the work was a log yarder. After the work was completed, Eager Beaver parked the yarder on United States Forest Service land adjacent to Ms. Beavert's property, allegedly with forest service permission. Although Eager Beaver maintains that it started up the yarder periodically to keep the bearings from seizing up and to prevent water from collecting in the oil, it is undisputed that the yarder's condition deteriorated significantly over the next several years.

In 2008, Ms. Beavert asked her tenant, Michael Sutton, to help her remove the yarder, which she considered unsightly. Mr. Sutton was then an employee of Bulldog Trucking & Excavation LLC, which had recently begun using its equipment for scrap demolition and recycling, due to a sharp rise in its value. Mr. Sutton's manager, Donald Eldredge, told company employees to keep an eye out for available scrap. When told about the yarder, Mr. Eldredge gave Mr. Sutton permission to use the company's equipment and its employees to dismantle it for Ms. Beavert, with the understanding that Mr. Sutton and Bulldog would divide proceeds from the scrap.

Ms. Beavert gave Mr. Sutton a key to a locked gate that led to the location of the yarder and Mr. Sutton began dismantling it for scrap. Approximately halfway into complete destruction of the yarder, Tracy Gronlund, the president of Eager Beaver, received a call from a neighbor down the road from the Beaverts, who informed him that his yarder was being dismantled and taken away. Mr. Gronlund immediately drove to the site, discovered Mr. Sutton and two other men scrapping the yarder, and stopped their work. Bulldog received $7,530.75 for the scrap that had been cut by that point and sold to Seattle Iron & Metals Corporation. Bulldog later paid those proceeds over to Eager Beaver. What remained of the yarder was not worth repairing and could only be sold for scrap. Eager Beaver obtained $1,500 for what remained.

Eager Beaver sued Bulldog, Cindy and "John Doe" Beavert, Seattle Iron, and Michael and "Jane Doe" Sutton for conversion, and asserted an additional claim for negligence against Bulldog and Seattle Iron. It later moved to amend the complaint to add a claim for damages under RCW 4.24.630(1), which the trial court granted. The claims against Seattle Iron were dismissed on summary judgment.

Eager Beaver then moved for partial summary judgment on liability for conversion against the remaining defendants, which the trial court granted. The issue of damages proceeded to a bench trial in May 2011. In a memorandum decision, the trial court found that given the deteriorated condition of the yarder, its highest and best use at the time of conversion was as scrap, and its salvage value at that time was $11,000. It

3

awarded treble damages under RCW 4.24.630(1) against only the Beaverts and the Suttons, finding that Ms. Beavert and Mr. Sutton had acted "wrongfully" within the meaning of the statute.

The court calculated the treble damages recoverable against the Beaverts and Suttons as $23,969.25. It calculated the damages recoverable against Bulldog—net of the proceeds for scrap that Eager Beaver had received directly, and from Bulldog—as $1,969.25.

All parties moved the court to reconsider its application of RCW 4.24.630(1). Eager Beaver argued that Bulldog was also chargeable with wrongful conduct, directly or through its employee, Mr. Sutton. The Beaverts and Mr. Sutton argued that the statute was a trespass statute and did not apply because the yarder was on forest service property and they had not trespassed in dismantling it. Alternatively, they argued that further trial was required on the application of the statute, claiming that Eager Beaver's request for treble damages under the statute was raised for the first time on the morning of the damages trial, the parties were not prepared to present evidence on the statute's application, and the court had lacked a sufficient record on which to decide liability.

The trial court granted the motion to re-open and entertain additional evidence on the issue of Mr. Sutton's and Bulldog's liability under RCW 4.24.630(1). It refused to entertain additional evidence as to the Beaverts' liability, concluding that Ms. Beavert's liability was clear. When Eager Beaver and the Beaverts thereafter resolved the issues

between them, the trial court entered an agreed order dismissing the Beaverts from the case.

The trial court heard additional evidence on liability under RCW 4.24.630(1) in November 2011, including testimony from Mr. Sutton and Mr. Eldredge. Having heard the evidence, it reversed its earlier decision as to Mr. Sutton's liability. It found that neither he nor Bulldog acted wrongfully since both believed the yarder had been abandoned and that they were authorized by Ms. Beavert to remove it.

Eager Beaver appeals, raising two issues. The first is whether the trial court misconstrued RCW 4.24.630 by treating Mr. Sutton's and Bulldog's subjective belief about "whether they were 'going onto the land of another'" as a factor in determining their liability. Br. of Appellant at 1.

The second is whether the trial court erred in concluding that Mr. Sutton and Bulldog did not act wrongfully. In connection with this second issue, Eager Beaver implicitly challenges some of the trial court's factual findings, but without assigning error under RAP 10.3. Even more problematic is that it challenges those findings without providing a verbatim report of the relevant proceedings. For reasons discussed below, we will not consider Eager Beaver's challenges to the court's findings.

## ANALYSIS

We address the two issues raised by Eager Beaver in turn.

*I. Application of RCW 4.24.630(1).*

RCW 4.24.630, entitled "Liability for damage to land and property," provides in relevant part:

> Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury.

RCW 4.24.630(1). It goes on to provide that for purposes of the section, "a person acts 'wrongfully' if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act." *Id.*

Eager Beaver argues that since Mr. Sutton went onto forest service land ("the land of another") and thereupon "wrongfully injured personal property," then Eager Beaver— the "injured party"—is entitled to treble damages under the statute. It argues that Mr. Sutton's subjective belief that the yarder was located on the Beaverts' property was irrelevant. Bulldog answers in part that RCW 4.24.630(1) is a trespass statute and that Mr. Sutton did not commit a trespass by entering onto forest service land open to the public.

RCW 4.24.630(1) is not as explicit as RCW 64.12.030, the timber trespass statute, in requiring that the entry onto "the land of another" be a trespass. Both statutes speak of entry onto "the land of another," but unlike RCW 4.24.630(1), the timber trespass statute explicitly frames a claim under the statute as one that involves an invasion of the

6

plaintiff's interest in the subject land: it states that recovery under the statute is provided "in an action by such person" with "such person" referring to the person on whose land the timber is located, and it states that the claim is "against the person committing such trespasses." Former RCW 64.12.030 (1881). RCW 4.24.630(1) lacks either of these further direct or indirect references to trespass but nonetheless has been repeatedly characterized by Washington courts as a trespass statute.

In *Colwell v. Etzell*, 119 Wn. App. 432, 439, 81 P.3d 895 (2003), this court held that "[t]he statute's premise is that the defendant physically trespasses on the plaintiff's land." This court refused to apply RCW 4.24.630(1) in *Colwell* because "[t]here was no physical trespass in the present case." *Id.* Judge Sweeney, concurring, stated that "[t]he plain language of the statute requires a trespass," citing the language "every person who goes onto the land of another." *Id.* at 444.

Both our Supreme Court and Division One of our court have characterized the statute as describing the elements of "statutory trespass." *Saddle Mountain Minerals, LLC v. Joshi*, 152 Wn.2d 242, 249, 95 P.3d 1236 (2004); *Clipse v. Michels Pipeline Constr., Inc.*, 154 Wn. App. 573, 576, 225 P.2d 492 (2010). Division One in *Clipse* pointed out that the statute was enacted by Laws of 1994, chapter 280, in the same bill that amended former RCW 79.01.760 (1993), the then-existing law pertaining to public lands trespass, and that the house bill report stated that the bill would establish similar civil damages provisions "'with respect to all lands.'" *Id.* at 579 (quoting record). In its

recent decision in *Bird v. Best Plumbing Group, LLC*, 175 Wn.2d 756, 762, 774, 287

P.3d 551 (2012), our Supreme Court repeatedly referred to RCW 4.24.630 as "the

trespass statute."

Here, court minutes reveal that the trial court concluded that RCW 4.24.630(1) is

"much broader than just trespass" and that it conceivably applied to the defendants,

depending on their knowledge and intent. Clerk's Papers (CP) at 420. The court appears

to have based its interpretation on the fact that the statute is not explicit that the owner of

the entered land must be the "injured party" or in referring to a "trespass." None of the

decisions cited above have focused on the absence of such language in the statute.

Statutory construction is a question of law and reviewed de novo. *State v. Elmore*,

154 Wn. App. 885, 904-05, 228 P.3d 760 (2010). We interpret statutes to give effect to

the legislature's intent. *City of Spokane v. Spokane County*, 158 Wn.2d 661, 673, 146

P.3d 893 (2006). If a statute's meaning is plain on its face, then the court will give effect

to that plain meaning as an expression of legislative intent. *State ex rel. Citizens Against

Tolls v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). Plain meaning is discerned

not only from the provision in question but also from closely related statutes and the

underlying legislative purposes. *Id.*

We avoid constructions that yield unlikely, absurd, or strained consequences.

*Kilian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002). It is only if a statute is

susceptible to two or more reasonable interpretations that it is ambiguous and that we

8

resort to additional canons of statutory construction or legislative history. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002).

The earlier-mentioned bill enacting RCW 4.24.630, which amended another trespass statute, informs the plain meaning of RCW 4.24.630(1), as does RCW 4.24.630(2), which makes the remedy under subsection (1) unavailable in the event that one of several other more specific trespass or trespass immunity statutes applies. And under the construction advanced by Eager Beaver, the remedy provided by subsection (1) would not be available if Ms. Beavert injured the yarder on her own property yet would be available if she injured it on adjacent forest service property—an arbitrary and irrational result. For these reasons, we reject Eager Beaver's arguments and reaffirm *Colwell*'s conclusion that the plain premise of RCW 4.24.630 is that a defendant has physically trespassed on the plaintiff's land. The statute does not apply, then, to injury of a private person's property that is located on forest service land open to the public.

*II. Was there an insufficient basis for the trial court's conclusion that Mr. Sutton and Bulldog did not know they lacked authorization?*

We will also address the second issue raised by Eager Beaver, which argues that the trial court erred in finding that Mr. Sutton and Bulldog were unaware they lacked authorization and in concluding, from that, that they did not act wrongfully. It cites extensively to deposition testimony, some apparently published during trial, but without providing a transcript of other evidence presented in the trial.

RAP 9.2(b) states that "[a] party should arrange for the transcription of all those portions of the verbatim report of proceedings necessary to present the issues raised on review." It further provides, "If the party seeking review intends to urge that a verdict or finding of fact is not supported by the evidence, the party should include in the record all evidence relevant to the disputed verdict or finding." *Id.*

Eager Beaver rationalizes its failure to provide a verbatim transcript by representing that the facts are "essentially undisputed." Br. of Appellant at 1. Mr. Sutton and Bulldog disagree, characterizing the facts relating to the application of RCW 4.24.630 as "highly disputed." Br. of Resp't at 1. The fact that the trial court's findings conflict with the evidence as characterized by Eager Beaver is sufficient for our purposes to establish that the evidence was disputed and a report of proceedings is necessary for appeal.

It is axiomatic that an appellant cannot ask us to decide that evidence presented to the trial court did not support its findings and at the same time fail to provide us with all the evidence on which the trial court was entitled to rely. Our presumption is that the trial court, not an advocate, is the reliable reporter of what was proved. Accordingly, if an inadequate record is provided we will treat all of the trial court's findings as verities. Our review is limited to whether the findings of fact support the trial court's conclusions of law. *Haberman v. Elledge*, 42 Wn. App. 744, 745-46, 713 P.2d 746 (1986).

10

As previously observed, the statute provides that for purposes of subsection (1), "a person acts 'wrongfully' if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act." RCW 4.24.630. In *Clipse*, 154 Wn. App. 573, Division One addressed an ambiguity certified by a superior court: should the second appearance of the word "acts" in the statutory definition be read as a noun or a verb? In other words, should the relevant language in subsection (1) be read as:

> A person acts "wrongfully" if the person intentionally and unreasonably commits the act [*noun, meaning a single act*] or acts [*noun, meaning multiple acts*]
>
> while knowing, or having reason to know, that he or she lacks authorization to so act,

or should it be read as:

> A person acts "wrongfully" if the person intentionally and unreasonably commits the act [*noun: single act*]
>
> or [*if he*] acts [*verb*] while knowing, or having reason to know, that he or she lacks authorization to so act[.]

The first construction would require that a plaintiff like Eager Beaver show that a defendant's conduct be intentional, unreasonable, *and* knowing or having reason to know of a lack of authorization. The second construction would permit a plaintiff to show that a defendant, while perhaps not acting intentionally or unreasonably, at least knew or had reason to know of a lack of authorization. For sound reasons that we need not repeat here, Division One concluded that the second use of "acts" is as a noun, and that to

11

establish that a person has acted wrongfully for purposes of the statute, a plaintiff must show that he "'intentionally and unreasonably commits an act while knowing or having reason to know that he or she lacks authority to so act.'" *Id.* at 579-80 (quoting record); *accord Borden v. City of Olympia*, 113 Wn. App. 359, 374, 53 P.3d 1020 (2002) (RCW 4.24.630 requires that a claimant "show that the defendant 'wrongfully' caused waste or injury to land, and a defendant acts 'wrongfully' only if he or she acts 'intentionally'"); *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 246, 23 P.3d 520 (2001) ("[A]s the plain language of RCW 4.24.630(1) envisions wrongful conduct, any violation of that statute is analogous to an intentional tort, like trespass to personal property or conversion.").

Here, the trial court's findings included the following:

> Defendants Bulldog and Sutton did not know or have reason to know they lacked authorization to scrap the yarder, but reasonably believed Beavert did.

CP at 575 (Finding of Fact 8), and

> Michael Sutton did not know who owned the yarder, but understood from Cindy Beavert that she did not own the yarder [and] that the yarder had been abandoned by whoever owned it, and that they owed her money.

*Id.* (Finding of Fact 15).

The trial court's conclusions of law included additional findings of fact.[1] When

---

[1] If a determination concerns whether evidence shows that something occurred or existed, it is properly labeled a finding of fact, but if the determination is made by a process of legal reasoning from facts in evidence, it is a conclusion of law. *State v.*

findings are included within conclusions we examine them for what they are, regardless

of their label. *Miller v. Anderson*, 91 Wn. App. 822, 825 n.1, 964 P.2d 365 (1998) (citing

*Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986)). We treat these findings,

too, as verities:

> At the request of the Defendant, Cindy Beavert, the Defendants, Michael Sutton and Bulldog Trucking went on the land of the U.S. Forest Service and salvaged a significant portion of the yarder.

CP at 578 (Conclusion of Law 5), and

> Mr. Eldredge had no reason to know his company lacked authorization. The yarder was accessed through Ms. Beavert's locked gate, no indicia of ownership were present, and the yarder's condition suggested it had been abandoned.

CP at 579 (Ex. A additional conclusion).

The trial court's conclusions of law included its conclusion that

> [i]n order for RCW 4.24.630 to apply, the Plaintiff must prove Defendant's actions were "wrongful" as defined in the statute.
>     . . . Since neither Mr. Sutton nor Bulldog Trucking knew who owned the yarder, and reasonably believed the yarder was on the property owned by Cindy Beavert, their actions were not wrongful[,]

CP at 578 (Conclusions of Law 5, 6), and that

> Bulldog Trucking is only liable for the value of the yarder.

---

*Niedergang*, 43 Wn. App. 656, 658-59, 719 P.2d 576 (1986). Stated differently, a finding of fact is "an 'assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect.'" *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197, 584 P.2d 968 (1978) (internal quotation marks omitted) (quoting *Leschi Improvement Council v. Wash. State Highway Comm'n*, 84 Wn.2d 271, 283, 525 P.2d 774, 804 P.2d 1 (1974)).

No. 30827-8-III
*Eager Beaver Inc. v. Bulldog Trucking & Excavation LLC*

CP at 579 (Ex. A additional conclusion).

These conclusions are supported by the findings. They provide an additional basis for determining that Mr. Sutton and Bulldog were not liable for treble damages under RCW 4.24.630(1).

### III. Attorney fees.

Eager Beaver requests reasonable attorney fees and expenses under RAP 18.1 and RCW 4.24.630(1). The statute provides an attorney fee remedy to a party entitled to recover under subsection (1) but we have determined that Eager Beaver was not entitled to recover.

The judgment of the trial court is affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.P.T.

14