IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MOORE TRUST BY ITS CO-TRUSTEES, JAY L. MOORE AND CHRISTINE A. MOORE,

Appellants,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,[†]

Defendant,

AND

GLENN WILEY GRUBBS, III, AND TAMARA MCMILLEN, HUSBAND AND WIFE,

Respondents.

No. 86291-0-I

DIVISION ONE

UNPUBLISHED OPINION

DíAZ, J. — Appellant Moore Trust and respondents, Glenn Grubbs III and Tamara McMillan, are adjoining landowners. Jay Moore and his wife are the grantors, trustees, and beneficiaries of Moore Trust.[1] Moore believed respondents

---

[†] Pursuant to a stipulation of the parties, the court dismissed Federal National Mortgage Association prior to the decisions challenged in this appeal.

[1] While legally distinct, we will use the term "Moore" interchangeably to refer to either Jay Moore or Moore Trust.

installed a fence inches within his property. Moore forcibly removed the fence with a blowtorch and sued respondents for inter alia trespass. Moore now argues the court erred in dismissing his claims on summary judgment and in granting summary judgment to respondents on their counterclaims for trespass and trespass to chattels, which a jury later assessed damages on. He further challenges the court's award of attorney fees under CR 11. We affirm.

## I.    BACKGROUND

In 1983, Moore purchased land in Burien, Washington. In 1998, Moore divided this property into four lots. In 2017, respondents purchased one of the lots ("Lot 3"), on which Moore had built a house, in which respondents have lived since. Moore retained ownership of the adjacent lot ("Lot 4"), which sat empty.

Grubbs is a professional fence builder. He claims he built a wooden split rail fence on the property line between Lot 3 and Lot 4. Approximately four years later, in November 2020, Grubbs replaced that fence with a chain link fence, claiming he measured between the two pertinent property pins and set a stringline three inches inside his own property line to ensure the fence was on his property.[2]

Moore claims that, on April 6, 2021, he discovered the chain link fence encroaching "several" inches onto his property during a "routine inspection" of Lot 4. He further claims McMillan promised that Grubbs would move the fence. Believing he had "wait[ed] long enough," between April 15 and 17, 2021, Moore at

---

[2] For his part, Moore disputes any wooden fence ever existed and the timing of the erection of the chain link fence, though he acknowledges there were some loose wooden rails on his property at some point. We need not discuss these factual disputes further, as they are immaterial.

2

least twice attempted to "disassemble" the fence with a blowtorch. Grubbs or McMillan called the police and repaired the fence each time afterwards. Moore claims that, after each incident, respondents "moved the offending section of fencing, each time farther East to the point where, now, it was no longer on [his] property" after litigation was underway.

In June 2021, Moore sued respondents in superior court. Moore alleged the initial placement of the chain link fence amounted to trespass and nuisance. The same month, respondents counterclaimed for inter alia trespass and trespass to chattels.

In January 2022, respondents moved for partial summary judgment on Moore's claims, further asserting he violated CR 11. In March 2022, the court granted their motion (First Order), dismissing Moore's complaint. In April 2022, court then granted respondents' motion for attorney fees and costs under CR 11 and RCW 4.84.185, reducing to judgment the award of $50,359.27 (First Judgment).

In March 2023, respondents and Moore moved for partial summary judgment on some or all of respondents' counterclaims, respectively. In April 2023, the court granted respondents' motion and denied Moore's motion (Second Order), granting partial summary judgment as to Moore's liability for common law trespass and trespass to chattels, leaving only the claims of civil assault and outrage for trial, the latter of which was dismissed voluntarily prior to trial.

In November 2023, following trial, a jury awarded respondents $2,360 in damages for trespass and $7,860 in damages for trespass to chattels, while

declining to find for respondents on their assault claim.[3]  The court later trebled the award of damages on respondents' trespass to chattels claim to $23,580 under RCW 4.24.630, and granted their motion for attorney fees in part, awarding, in a judgment of February 2024, an additional nearly $92,000 (Second Judgment).

Moore now appeals.

## II.    ANALYSIS

### A.    The Court's Orders on Summary Judgment

"Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  West v. Dep't of Fish & Wildlife, 21 Wn. App. 2d 435, 440, 506 P.3d 722 (2022).  "A 'material fact' is one on which the outcome of the litigation depends."  TracFone, Inc. v. City of Renton, 30 Wn. App. 2d 870, 875, 547 P.3d 902 (2024) (quoting Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977)).  "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation."  Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

"Washington courts employ a two-step burden-shifting analysis for summary judgment motions."  TracFone, 30 Wn. App. 2d at 875.  "First, the 'party moving for summary judgment bears the initial burden of showing that there is no disputed issue of material fact.'"  Id. (quoting Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022)).  "Second, the 'burden then shifts

---

[3] In December 2023, the court denied Moore's motion under CR 59 to set aside the jury's verdict, reconsider the earlier summary judgment motions, and order a new trial (together, "motion for reconsideration").

to the nonmoving party to present evidence that an issue of material fact remains.'" Id. (quoting Haley, 25 Wn. App. 2d at 216). "Stated otherwise, summary judgment gauges whether the nonmoving party has met their 'burden of production to create an issue' of material fact." Id. (quoting Rice v. Offshore Sys., Inc., 167 Wn. App. 77, 89, 272 P.3d 865 (2012)).

Importantly, "[m]ere *speculation* cannot support or defeat a motion for summary judgment." Umpqua Bank v. Gunzel, 19 Wn. App. 2d 16, 34, 501 P.3d 177 (2021) (emphasis added); BLACK'S LAW DICTIONARY 1692 (12th ed. 2024) (defining speculation as "theorizing about matters over which there is no certain knowledge"). And "*[c]onclusory* statements of fact" also are "insufficient to defeat a summary judgment motion." Hamblin v. Castillo Garcia, 23 Wn. App. 2d 814, 831, 517 P.3d 1080 (2022) (emphasis added); BLACK'S LAW DICTIONARY, supra, at 365 (defining conclusory as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based"). In turn, a nonmoving party may not rely "on having [their] affidavits considered at face value" and "must *demonstrate the basis* for [their] assertions." Strong v. Terrell, 147 Wn. App. 376, 384, 195 P.3d 977 (2008); Doty-Fielding v. Town of South Prairie, 143 Wn. App. 559, 566, 178 P.3d 1054 (2008) (emphasis added).

Equally importantly, the reviewing court "'may not weigh the evidence, assess credibility, consider the likelihood that the evidence will prove true, or otherwise resolve issues of material fact.'" TracFone, 30 Wn. App. 2d at 876 (quoting Haley, 25 Wn. App. 2d at 217). In short, summary judgment does not determine or resolve issues of fact. Id. at 875. And, specifically, on "cross motions

for summary judgment, we view the evidence in the light most favorable to the nonmoving party with respect to the particular claim." West, 21 Wn. App. 2d at 441 (citing CR 56). Finally, we review orders on summary judgment de novo. TracFone, 30 Wn. App. 2d at 876.

To frame our discussion, the parties' commissioned three surveys on the property line dividing Lot 3 from Lot 4. The first is the June 1998 "Schroeter Survey" commissioned by Moore. The second is the January 2022 "Ray Survey" commissioned by respondents. The third is the March 2022 "Follansbee Survey" commissioned by Moore.

1. First Order: Dismissing Moore's Complaint

In its First Order, the court held that Moore "failed to sustain his burden on summary judgment of submit[ing] admissible evidence to rebut the location of the boundary line as established by both his own surveyor, Schroeter, and defendants' surveyor, James Ray." We agree.

Respondents, the moving party, submitted inter alia the Ray Survey and Ray's accompanying declaration. The Ray Survey, shown below, shows the chain-link fence posts are entirely within respondents' Lot 3.



Ray's declaration states his survey shows the "fence, in its present position, is within the lot line of" Lot 3.

Importantly, Ray's declaration also provided the basis of his opinion, i.e., how he conducted the survey. Ray testified that he examined documents from the 1998 subdivision, including the Schroeter Survey, and additional documents such as tax parcel maps and aerial photos, as well as visiting the site to look "for field conditions for the controlling monuments." At this visit, Ray "was able to locate and dig up all of the original capped lot corner rebars set up by Schroeter" from the 1998 survey. The Ray Survey itself also includes a procedural description that "field measurements using . . . static observations with a dual frequency GPS were combined in the office with network least squares to confirm that the relative

positional precision between any two points shown is 0.07 feet + 50PPM at the 95% confidence level."

The burden then shifted to Moore as the non-moving party to rebut the above evidence with "specific facts showing there is a genuine issue for trial." TracFone, 30 Wn. App. 2d at 875; CR 56(e). Moore submitted his first declaration, which described "his specific personal experience" with the property, and which he contends was sufficient to defeat summary judgment. We disagree.

His first declaration substantively begins by stating that he was "born and raised about 150 yards from the site of the property line in question" and he has "been familiar with it since [his] childhood and lived on the same block in that vicinity for 68 years." Moore goes on to declare that the "North end of the fence line dividing Lot 3 and Lot 4 . . . had, until [respondents] made unauthorized changes to it, been marked by an appropriate metal corner marker . . . installed in 1998." From this, he states that he has "*always known* where that corner was located," "checked it every year," and "marked the South end of that line . . . with an erect *pole* . . . about 8 feet long." (Emphasis added.) Moore next declares that, when he "went to the site for a routine inspection," he discovered that the fence "was located several inches West onto [his] property."

It is undisputed that Moore is familiar with the property and familiar with where the corner markers may have once been. None of these statements, however, "demonstrate the basis" of Moore's knowledge, *specifically*, of the run of the property line, i.e, the line between the two relevant points, to any relative positional precision. Doty-Fielding, 143 Wn. App. at 566. Even viewing his

8

declaration in the light most favorable to him as we must, Moore at most implies that, because he has "always known" the corner marker's location and placed a pole there, he knows the precise location of the property line, down to the inches. West, 21 Wn. App. 2d at 441. He fails to provide "specific facts" on how he knows the necessary hyper-precise location of the property line. CR 56(e). Without explaining in a non-"conclusory" way *how he knows* the location of the run of the property line, he has no basis for his opinion that respondents trespassed. Hamblin, 23 Wn. App. 2d at 831.

Moore next declares in pertinent part that, after he confronted respondents in April 2021 and attempted to disassemble the fence, they "moved the offending section of fencing, each time farther East to the point where, now, it is no longer on my property." And he argues that this portion of his declaration "stood in direct opposition to the assertions of the surveyor speculating about the location of a fence he did not see," rendering "summary judgment improper." This argument is both inaccurate and fails for similar reasons.

The Ray Survey found and marked both the "previous former split fail fence post[s]" and the "chain link fence post[s]." There was no mere speculation of the location of fences, both of which Ray declared were on respondents' property.

Moreover, Moore's statements—regarding purportedly "unauthorized changes" to the corner markers, and statements about respondents moving the fence slightly further back over a period of days, weeks or months—are still silent about how he knows respondents' alleged "initial" placement of the fence was on his property line with such remarkable accuracy. Even if not conclusory, this claim

9

is speculative and, thus, insufficient.  Umpqua Bank, 19 Wn. App. 2d at 34; BLACK'S LAW DICTIONARY, supra, at 1692.

Moore's claim does not even stand in direct opposition to Grubbs' declaration that, using the two pertinent property pins, he set a stringline to ensure the fence was on his property.  Moore nowhere claims he did anything similar to establish a straight and accurate run of the property line.

Finally, Moore declared that, sometime after the April 2021 confrontations, the "fence was back over [his] meter box" and, thus, he "went back to work with [his] torch."  If we were to hold that this statement rebuts respondents' evidence, we would need to assume—without any facts in evidence—that a fence which runs above the meter box must be on Moore's property.  But he does not explain how he knows the meter box is solely on his property line, rendering his statement again conclusory.  Hamblin, 23 Wn. App. 2d at 831.  The Ray Survey shows the property line passing through the water meter box, with the fence on respondents' side. That claim is effectively unrebutted.

Otherwise, Moore does nothing more than "rely . . . on having [his] affidavits considered at face value."[4]  Strong, 147 Wn. App. at 384.  Thus, we hold the court properly dismissed Moore's trespass claim in its First Order.

2. Second Order: Granting Respondent's Counterclaims

In its Second Order, the court granted respondents' motion for summary

---

[4] Prior to the court's First Order, Moore attempted to introduce photos that purportedly showed the fence encroaching on his property and placed over the meter box.  The court struck these photos as lacking authentication and foundation.  Moore does not assign error to this decision.

judgment on liability on their counterclaims for trespass and trespass to chattels, while denying Moore's partial motion for summary judgment to dismiss those counterclaims. In support of his motion and in opposition to respondents', Moore had attached a relatively minimally revised second declaration, which he now claims provided "the basis for his conclusion that the fence was initially constructed on Trust property." We disagree.

a. Respondents' Trespass Claim

In his second declaration, Moore added some details about the appearance of the 1998 corner marker and his familiarity with the property.[5] Neither provide a "basis" or "specific facts" connecting the property line to respondents' alleged trespass. Doty-Fielding, 143 Wn. App. at 566; CR 56(e).

Moore also adds more detail as to his "encounters" with McMillan and the police in April 2021. These new statements largely recount his view of events and not *how he knows* respondents' fence crossed his property line. At most, Moore states, in conclusory fashion, that he "assisted [McMillan] in sighting down the line to the tall pole that marked the Southeast corner of our property and the Southwest corner of their property." Moore fails to explain how he could accurately assist McMillian or later the police "in sighting down the line," rendering his statements

---

[5] As to the corner marker, Moore declared that, "until [respondents] removed that corner marker" it "had been marked by a 1/2" inch diameter length of rebar with an orange plastic cap about 1¼ inches in diameter which was installed in 1998 by [Schroeter]." As to his knowledge of the site, Moore declared that he was "very familiar with all the lots, the property lines and corner markers," as he "previously owned that very Lot 3 and [was] well acquainted with its corners and boundary lines" and "marked the South end of that line . . . with an erect pole" that was "about 8 feet long, installed at that point as per the original survey."

11

still conclusory. Hamblin, 23 Wn. App. 2d at 831.

Moore newly also claims that "[a]ll fencing was on my property line or near enough to it that the concrete for the fencepost holes was partially on my property" and the "northern portion of the original location of the fence built by Grubbs was west of the line and was located on my property." Once again, however, Moore does not explain his basis for his assertion that the property line crossed the "concrete" (and thus respondents trespassed), rendering these statements likewise conclusory. Hamblin, 23 Wn. App. 2d at 831; Doty-Fielding, 143 Wn. App. at 566.

Finally, as he did in his first declaration, Moore declares that respondents "and I have each privately retained our own surveyor to confirm that the original location of the corner post dividing our properties was correct and those surveyors agree on the location of the line; but it is East of where the [respondents] initially built the fence and thus the fence was initially built on my property."

Moore appears to be referencing the Ray and Follansbee Surveys. However, Moore did not provide the Follansbee Survey in support of his motion or in opposition to respondents' motion. In fact, the record before us indicates Moore did not provide the court the Follansbee Survey until after the court had ruled and in support of his motion for reconsideration, to be discussed later. For now, Moore merely states, without elaboration, that while the surveys "agree on the location of the line, . . . it is East of where [respondents] *initially* built the fence." Thus, this statement, as before, provides no reason to believe the alleged "initially" installed fence trespassed on his land. Hamblin, 23 Wn. App. 2d at 831; Doty-Fielding, 143

12

Wn. App. at 566. Indeed, as did Ray's, the Follansbee Survey provides, as shown below, that respondents' chain-link fence was on respondents' property.



In short, Moore's second declaration is insufficient to merit his own or defeat respondents' summary judgment as he asks to have his "affidavits considered at face value." Strong, 147 Wn. App. at 384. Thus, we hold the court properly granted respondents' motion for summary judgment on their trespass claim.

        b.  Respondents' Trespass to Chattels Claim

In its Second Order, the court also granted summary judgment for respondents' trespass to chattels counterclaim. Relying on RCW 4.24.630(1), Moore claims he "certainly" and "reasonably believed" that the initial placement of the fence constituted trespass and had no reason to know otherwise, precluding

summary judgment on this counterclaim.  We disagree.

RCW 4.24.630(1) states that "[e]very person who goes onto the land of another and . . . *wrongfully* injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages." (Emphasis added.)  A "person acts 'wrongfully' if the person *intentionally* and *unreasonably* commits the act or acts while *knowing, or having reason to know*, that he or she lacks authorization to so act."  (Emphasis added.)  Thus, a plaintiff must show the perpetrator acted intentionally, unreasonably, and with the requisite knowledge of lack of authorization.  RCW 4.24.630(1); Clipse v. Michels Pipeline Const., Inc., 154 Wn. App. 573, 580, 225 P.3d 492 (2010) (hereinafter Clipse I).

As to intentionality, under RCW 4.24.630(1), the party must be more than merely negligent.  Borden v. City of Olympia, 113 Wn. App. 359, 364, 374, 53 P.3d 1020 (2002) ("evidence here does not support an inference that the City intentionally, as opposed to negligently, caused waste or injury" from flooding).

Here, Moore's own declarations expressly and repeatedly admit that he deliberately acted to "remove" or "disassemble" the fence with a blowtorch, and successfully did so on parts of the fence at least twice.  Thus, we conclude the court did not err in holding there was no genuine issue of material fact that Moore intentionally committed the act of going on to (what has been determined as a matter of law to be) respondents' property and destroyed a fence, under RCW 4.24.630(1).

As to reasonableness, under RCW 4.24.630(1), this court has held that evidence of a party's attempt to investigate or clarify property rights or obligations

can support a finding of reasonableness. Colwell v. Etzell, 119 Wn. App. 432, 436, 440, 81 P.3d 895 (2003) ("evidence indicated efforts by Mr. Etzell to attempt to clarify and formally establish an easement access acceptable to both parties," which included "communicat[ing] several times" with the other party's attorney); see also BLACK'S LAW DICTIONARY, supra, at 1520 (defining reasonable in part as "[r]eflecting good judgment; fair and proper under the circumstances.").

Other than his conversations with McMillan, Moore offers no evidence of any efforts to investigate or clarify the property boundary prior to his first attempt to disassemble it. Moore simply asserts he had "always known" there the boundary lines were, land "act[ed] reasonably in light of the mistake [respondents] had made." This is patently conclusory and, thus, insufficient to survive summary judgment. Hamblin, 23 Wn. App. 2d at 831. Thus, we conclude the court did not err in holding there was no genuine issue of material fact that Moore acted unreasonably under RCW 4.24.630(1).

Finally, as to the knowledge component of RCW 4.24.630(1), a plaintiff must show that the defendant had "kn[own] or ha[d] reason to know that he or she lacked authorization" to act as they did. Clipse I, 154 Wn. App. at 580. This requirement is met by *either* objective or subjective knowledge. In re Forfeiture of Chevrolet Chevelle, 166 Wn.2d 834, 842, 215 P.3d 166 (2009).

As quoted above, Moore certainly claims that he "believed," i.e., lacked subjective knowledge, that he had authorization to enter what-he-thought-was his own property. But, Moore also acknowledges that respondents made no effort between April 6 and 15, 2021 to move the fence and that, when at least three

police officers and additional firemen arrived, the former ordered him to put down his blowtorch, despite trying to convince them that it was his property. Having procured no survey of the offending fence, i.e., to "clarify" the dispute, and now having been met with, charitably, skepticism from third parties, Moore had reason to know he was not actually authorized to enter their property to dismantle the fence, and yet he returned again the next day to go "to work with [his] torch." On appeal, he offers nothing in response, other than conclusory statements that he had reason to subjectively "believe . . . that he had lawful authority to remove" the fence. Thus, we conclude the court did not err in holding that Moore had the requisite knowledge under RCW 4.24.630(1).

In turn, we hold the court did not err in granting summary judgment to respondents on their trespass to chattels claim as Moore failed to establish a genuine issue of material fact under RCW 4.24.630(1).[6]

B.     Attorney Fees

    1. Fees Assessed by the Trial Court[7]

---

[6] Moore assigns error to the court's denial of his motion for reconsideration. Moore fails to present any substantive argument or legal authority "bearing on" CR 59, and thus we need not consider the issue as it is waived. Smith v. King, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986).

[7] As a preliminary matter, respondents move this court for dismissal of this portion of Moore's appeal because he "did not appeal the [First Judgment] within 30 days as required by RAP 5.2" and did not "designate that Judgment in his notice of appeal" as required by RAP 2.4(a) and RAP 5.3(a)(3). We disagree, deny the motion, and will consider the merits of Moore's challenge because he assigned error to the court "awarding attorneys' fees pursuant to RCW 4.84.185 and CR 11" and offers substantive argument. Clark County v. W. Wash. Growth Mgmt. Hr'gs Review Bd., 177 Wn.2d 136, 144, 298 P.3d 704 (2013) (noting the scope of an appeal is determined by "notice of appeal" as well as "the assignments of error, and the substantive argumentation of the parties.").

Moore challenges the court's award of $50,359.27 in attorney fees under CR 11 and RCW 4.84.185. We disagree.

The decision to award fees under CR 11 or RCW 4.84.185 "is left to the trial court's discretion and will not be disturbed in the absence of a *clear* showing of abuse." Tiger Oil Corp. v. Dep't of Licensing, 88 Wn. App. 925, 937-38, 946 P.2d 1235 (1997) (emphasis added). "A trial court abuses its discretion when its decision is manifestly unreasonable, or is based on untenable grounds or for untenable reasons." Clipse v. Commercial Driver Serv's Inc., 189 Wn. App. 776, 787, 358 P.3d 464 (2015) ("Clipse II"). "A decision is manifestly unreasonable if the trial court takes a view that no reasonable person would take. And a trial court's decision rests on untenable grounds or reasons if the trial court applies the wrong legal standard or relies on unsupported facts." Id. (citing Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 669, 230 P.3d 583 (2010)).

CR 11(a)(1) requires an attorney to certify that their filings were "to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" and "well grounded in fact." "If a party violates CR 11, the court may impose an appropriate sanction, which may include reasonable attorney fees and expenses." Eller v. E. Sprague Motors & R.V.'s, Inc., 159 Wn. App. 180, 190, 244 P.3d 447 (2010).

When gauging CR 11 sanctions, we apply "an objective standard to determine 'whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified.'" Id. (quoting Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 220, 829 P.2d 1099 (1992)). "The court is expected to

avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or legal memorandum was submitted." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 220, 829 P.2d 1099 (1992).

The trial court first "'must make a finding that either the claim is *not* grounded in fact or law and the attorney or party failed to make a reasonable inquiry into the law or facts, *or* the paper was filed for an improper purpose.'" State ex rel. Quick Ruben v. Verharen, 136 Wn.2d 888, 904, 969 P.2d 64 (1998) (quoting Biggs v. Vail, 124 Wn.2d 193, 201, 876 P.2d 448 (1994)). Here, the court primarily found the former, asserting Moore's "complaint was not well grounded in fact and was not filed in good faith" or "reasonably based on information" because Moore did "not check his own short plat" or "engage a professional to locate actual markers that existed in the ground at the true corner boundary between Lots 3 and 4."

Moore is correct that CR 11 sanctions are not warranted "merely because an action's factual basis proves deficient or a party's view of the law proves incorrect." Doe v. Spokane and Inland Empire Blood Bank, 55 Wn. App. 106, 111, 780 P.2d 853 (1989). But Moore does not explain how the court took a "view that no reasonable person would take." Clipse II, 189 Wn. App. at 787.

Instead, Moore's brief cites to only Moore's declaration and photographs, the latter of which were excluded at the time of the court's First Order. As discussed above, Moore's declaration was conclusory and speculative as to one of the key facts in this case: *how Moore knew* respondents' initial placement of the

18

fence crossed into his property. The excluded pictures, not only were inadmissible—again a claim not here contested—but provide no such support for that crucial fact.

Otherwise, before the trial court, Moore's counsel filed a separate declaration defending his investigation. Therein, he declares that, on the one hand, he "acted based on the reasonable representations of my client,"[8] and, on the other, he "did not become aware, nor gain knowledge, of dispositive facts, until he obtained the results of his own [Follansbee] survey which included proof that Grubbs had, in fact, initially built the fence, in part, on the Moore property." These assertions are unpersuasive.

As to the former—that he reasonably relied "on the trustee's experience and representations"—"'[a]n attorney's blind reliance on a client . . . will seldom constitute reasonable inquiry.'" MacDonald v. Korum Ford, 80 Wn. App. 877, 890, 912 P.2d 1052 (1996) (alterations in original) (quoting Miller v. Badgley, 51 Wn. App. 285, 302, 753 P.2d 530 (1988)).

As to the latter, Moore mischaracterizes the Follansbee Survey, which shows the chain-link fence on respondents' property. And this assertion is inconsistent with the fact that Moore filed his complaint and submitted his declaration *before* Follansbee completed his survey, which is dated March 15, 2022, and coincidentally the same day the court issued its First Order.

---

[8] Similar to Moore's first declaration, his attorney declares in conclusory fashion that Moore's representations were "reasonable" due to his general status as the "developer and owner of the subdivision and short plat" and because he "continued to visit the site," without any explanation about why he believed Moore had properly determined the property line in relation to the fence.

19

In short, Moore has made no "*clear* showing of abuse" when it held that essentially he "shot first and asked questions later," i.e., filed suit and even moved for summary judgment before completing a survey. Tiger Oil Corp., 88 Wn. App. at 937-38.

To be clear, we do not imply that a failure to obtain a survey establishes a failure to make a reasonable inquiry in every property dispute. But the evidence before the court at the time of the First Order did not show the court's decision was "manifestly unreasonable, or is based on untenable grounds or for untenable reasons." Clipse II, 189 Wn. App. at 787.

As the court equally premised its attorney fee order on CR 11 and RCW 4.84.185, we need not consider the latter.

2. Appellate Fees

Respondents seek their attorney fees and costs on appeal under RAP 18.1, which authorizes an award where "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." Respondents rely on RCW 4.24.630 and RCW 7.24.100.

The trespass to chattel statute, RCW 4.24.630(1), provides that the losing party "is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs."

As respondents complied with the requirements of RAP 18.1, we grant their request for attorney fees under RCW 4.24.630, and need not reach what costs may be reimbursable under RCW 7.24.100.

### III.   CONCLUSION

We affirm.

_Díaz, J._

WE CONCUR:

_Feldman, J._                    _Mann, J._